**332**

June, 1809.

JOSEPH HAMILTON and REBECCA, his wife, *against*
JOSHUA HEMPSTED.

*A.* devised his lands to his son *B.* and his male heir; but if he should have no male heir, then to his daughters; and if he should die without issue, then to the daughters of *A.* Held, that *B.* took an estate-tail. By the common law of *Connecticut*, an estate-tail became an estate in fee-simple in the issue of the first donee in tail.

In 1707, the General Assembly of *Connecticut* had not so far parted with their judicial authority as to preclude them from awarding new trials in subordinate tribunals.

MOTION for a new trial.

This was an action of ejectment by the plaintiffs, in the right of the wife, claiming title to the demanded premises as tenants in common with the defendant, and alleging an actual ouster and exclusive possession by the defendant.

The general issue was pleaded.

On the trial, it appeared, that *Joshua Hempsted* the first devised the premises by a will dated the 17th of *October*, 1683, to his son *Joshua Hempsted* the second, with this clause of limitation: " Which lands, (to say,) all the lands given him, shall accrue unto the heir male of my said son, and not to be alienated; but if it should please God, he should have no heir male, then it shall become his daughter and daughters; and if it should please God, he should die without issue, then to be divided among my daughters, all or so many of them, as shall be then living."

In 1689, the testator died. No executor being named in the will, *Elizabeth*, widow of the testator, took out letters of administration in 1690, and proceeded to settle the estate as an intestate estate.

On the 1st of *October*, 1706, the will was presented, by *Joshua Hempsted* the second, to the *court of probate* in *New-London* county, for probate, which was refused. The record of that court is as follows: " *At a Court of Probate, held in New-London, October the 1st*, 1706.

" Mr. *Joshua Hempsted* appearing at this court, pre-
sented the will of his deceased father, *Joshua Hempsted*,
for probate; and this court, considering there is no ex-
ecutor appointed in said will, and that the court have
granted administration on said estate sixteen years ago;
and also, there being two children of the testator now
surviving, which were born since the will was made;
for the above recited reasons this court do not see cause
to give a probate to said will."

From this decree an appeal was taken, the record of
which is as follows: " *Joshua Hempsted* has an appeal
from this judgment to the *court of assistants* to be hol-
den in *Hartford* in *May* next. He, the said *Joshua
Hempsted*, acknowledges himself bound in a recogni-
sance of ten pounds, current money of *New England*, to
the public treasury of *Connecticut* colony, that he will pro-
secute the abovesaid appeal to effect, and answer all da-
mages in case he make not his plea good."

This appeal was entered at the *court of assistants*, in
*October*, 1707, who thereupon proceeded to act on the
same, and established the will. The record of their
decree is as follows: " This court, considering the pre-
mises, do approve and allow the said will to be the last
will and testament of the said *Joshua Hempsted*, decea-
sed, and that the disposition of his estate ought to be
regulated by it; always provided, that the children born
since the date of the will be allowed their portions out
of the whole estate equal to the daughters born before
the will was made, to be deducted out of the portions
of all of them by proportion, according to what is allow-
ed to each of them by the will." *Elizabeth*, the widow,
and *Joshua*, the son, of the testator, were, at the same
time, appointed administrators.

In *October*, 1708, *John Edgcomb* and said *Elizabeth*, whom he had married, preferred a petition to the *general assembly* for a new trial, which, after a full hearing, was granted. The reasons, which the record assigns for this decision, are, first, that the appeal from the *court of probate* was entered, not at the next *court of assistants*, but at the next court *but one;* and secondly, that the appellees, now petitioners, had neglected to take a review of the decree, which they might have done.

In *October*, 1709, a new trial was had, before the *court of assistants*, and the will established, according to the principles of the decree made two years before. *Joshua Hempsted* the second then went into possession of the premises. His title was afterwards confirmed by releases from the other heirs and claimants.

On the 27th of *November*, 1758, he made his will, whereby he devised the premises to his grandson *Joshua Hempsted* the third, son of his eldest son, *Nathaniel Hempsted*, deceased, and " to the male heirs of his body lawfully begotten, by a succession for ever from generation to generation." This will, after the testator's death, was regularly proved and approved.

*Joshua Hempsted* the third died, seised of the premises, without a will, leaving sundry children, male and female, of whom *Rebecca Hamilton* was one. The defendant was son of the *eldest son* of *Joshua Hempsted* the third, and claimed under the second will as the heir to whom the estate was limited.

In support of this claim, he contended, first, that the will of *Joshua* the first was not legally proved and approved; secondly, that by the words of that will, *Joshua* the second took an estate in fee-simple; and lastly, that if

4

he took an estate-tail, it could not be inherited by a *female* defendant.

The court instructed the jury, that the law was so, upon the facts which have been stated, that the will of *Joshua* the first was duly proved and approved; that the demanded premises were thereby entailed to *Joshua* the second; and that the estate became a fee-simple in *Joshua* the third, the issue of the first donee in tail.

The jury, in pursuance of these instructions, found a verdict for the plaintiffs; whereupon the defendant moved for a new trial. This motion was reserved for the consideration of the nine judges, before whom

*Law* and *Cleaveland*, for the defendant, insisted upon the same positions, which had been urged and over-ruled on the circuit.

1. The will in question was not exhibited for probate, until many years after the death of the testator. The *court of probate* then refused to allow it. From this sentence no regular appeal was taken. The statute then in force made provision for an appeal from any order, sentence, decree or denial, that should be made by the *court of probate*, referring to the approbation and allowance of any will, to the NEXT *court of assistants*, and *to no other after.* The proceedings on the appeal, which was taken to the next court *but one* were, therefore, void, being *coram non judice.* The subsequent proceedings of the *general assembly* could not remedy this defect. The rights of the parties had become *vested* in pursuance of the decree of probate. The *general assembly*, therefore, could not interfere in their *legislative* capacity; and as to the subject matter

June, 1809. of this application, they had parted with their *judicial*

HAMILTON authority.
v.
HEMPSTED.

　　2. It is clear, that by the *English* law, the words of this devise, in a *deed*, would not create an estate-tail. In a devise, it is true, their courts would give effect to the intent of the devisor. But there, the policy of the law is in favour of entailments. The policy of *our* law is opposed to them.

　　3. The law, at the time of making this will, was not so, that an estate-tail became a fee-simple in the issue of the first donee in tail. By the statute, which was then in force, and which had existed from a very early period of the government,(*a*) all persons were fully authorized to make *all lawful alienations* of their lands and other estates. To determine what was a " lawful alienation," reference must be had to the law of *England*. It was to this law that the framers of the act had reference, when they used those words. The law of *England* was our law, except where it had been altered by express statute, or where it was peculiarly opposed to the policy of our law. In practice, entailments have been regarded as operative here to the same extent as they are in *England;* and, in pursuance of this idea, tenants in tail in this state have suffered common recoveries.

　　*Gurley* and *Isham*, contra.

　　1. The will of *Joshua* the first was legally proved and established. The judgments of the *court of assistants*, both in 1707 and 1709, in express terms, allow and approve of the will, and direct that the disposition of the estate be regulated by it.

　　(*a*) Vide *Stat. Conn.* tit. 8. s. 1. and note (1).

It is said, however, that the devisee did not appeal to the *next* court, as he was bound by law to do but to the next *but one.* This, we contend, is wholly immaterial. The *court of assistants* did take cognisance of the appeal; and their decision has never been reversed, or set aside. It cannot now be inquired into collaterally. *Bush* v. *Sheldon*, 1 *Day*, 170. Besides, the *general assembly*, on petition, ordered a rehearing for this very irregularity, among other things; and a second confirmation of the will took place, on such rehearing. That the awarding of new trials in the subordinate tribunals was a power, which the general assembly, even at a later period, had the right to exercise, has been settled, by a decision of the *Supreme Court* of the *United States. Calder et Ux.* v. *Bull et Ux.* 3 *Dal.* 386.

2. The will in question gave an *estate-tail* to the devisee.

The intention of the testator is the pole-star, by which we are to be guided, in the construction of a will. Lord *Kenyon* says, " We almost spell every word in a devise to get at the intention of the testator." In the case of *Roe*, ex dem. *Dodson*, v. *Grew et al.* 2 *Wils.* 324. *Wilmot*, Ch. J. observed, that cases in the books upon wills had no great weight with him, unless they were exactly in the very point: the intention was the great thing which governed him. In this will, the intention of the testator is too obvious to require any remarks to evince it.

The language of this devise corresponds with the description of an estate-tail in *England*. The words " of *his body*" are not necessary in a will to create an estate-tail; it is sufficient, if the limitation be to the tes-

*June, 1809.*

HAMILTON
v.
HEMPSTED.

tator's *seed*, or his *heirs male*, or *his posterity*, or if any words are used which show an intention to restrain the inheritance to the descendants of the devisee. *Co. Litt.* 9. b. 27. a. 2 *Bla. Com.* 115. and note (10), by *Christian.* The court will supply the words " of *his body.*" *Denn,* ex dem. *Slater,* v. *Slater,* 5 *Term Rep.* 335.

Further, in this will there is a limitation over: " But if it should please God he should die without issue, then to be divided among my daughters," &c. making an estate-tail, not by construction or implication merely, but technically so. A devise to one, and the heirs of his body, and *their heirs for ever,* creates an estate-tail, if qualified by the words, *in case he shall die without issue. Denn,* ex dem. *Geering,* v. *Shenton, Cowp.* 410.

3. Our statute regarding entailments was in affirmance of the common law. It was introduced at the revision in 1784, by the committee of revision, not for the purpose of changing the law, but of sanctioning an unwritten canon, by an explicit legislative provision.

But it is unnecessary to inquire what the law was before the passing of that act. It was clearly intended to have a *retrospective* operation. After declaring prospectively, that no estate, either in fee-simple, fee-tail, &c. *shall be* given, &c. it proceeds to declare, that all estates *given* in tail shall be and remain an absolute estate in fee-simple. *Chappel* v. *Brewster, Kirby,* 175.

BY THE COURT. The proceedings in the probate of the will are conformable to the usage and practice of that period; for the *general assembly* then exercised extensive judicial power, especially in granting new trials. And it would be of dangerous consequence to set aside such ancient proceedings, because they do not appear to be conducted with all the regularity of modern times.

In the construction of devises, the intent of the devisor, collected from the whole devise, is to be pursued, if that intent is consistent with the policy of the law. Though the words " *heir male in perpetual succession*" would comprehend his heirs male generally; yet, when taken in connection with the other words in the devise, that *if the devisee has no heir male, then to his daughters, and if no issue, then to the daughters of the devisor*, it is manifest, that the devisor intended the heir male of his body begotten; and that his object was to create an estate in fee tail.

Our courts have never adopted the fee conditional at common law, nor the statute of *Westminster* 2d, called the statute *de donis ;* but from the principle, that the law abhors a perpetuity, they have decided, that a deed or devise, using words proper to create an estate in fee tail, should vest an estate in fee-simple in the issue of the first donee in tail : And the statute on that subject has been considered to be in affirmance of the common law.

New trial not to be granted.