### DART *against* DART and another.

Where a testator devised land to his son *S.*, his heirs and assigns forever,
adding this limitation : " My will further is, that my son *S.* shall not sell
or dispose of such land from his lawful male issue, and in case he should
die without lawful male issue, his land hereby given shall revert, and be-
come the estate of my surviving sons, and their male issue ;" it was held,
that *S.*, under this devise, took an estate in tail male general.

Though in this state, a release deed is a primary conveyance, and regularly
transfers all the right of the releasor to the releasee ; yet if the releasor
have no right at the time of the release made, nothing passes.

The issue of a donee in tail, during the life of such donee, has no right, which
he can transfer, by a release deed.

The deed of release in common use in this state, contains no warranty, ex-
press or implied, and does not estop the releasor to claim the right which it
purports to convey.

THIS was an action of ejectment for one undivided fifth part of a piece of land in *Waterford ;* tried at *Norwich, January* term, 1828, before *Lanman, J.*

On the 4th of *July,* 1754, *Roger Dart,* being seised in fee of certain lands, devised them as follows. 1. His farm at *Jordain* to his son *Roger,* his heirs and assigns forever, upon condition that he pay to two of the testator's daughters what their legacies should fall short of £50, old tenor, each. 2. The farm on which the testator then lived, of which the demanded premises are a part, to his sons *William* and *Solomon,* their heirs and assigns forever, upon condition that they pay to the child of his son *Richard* £15, old tenor, adding this limitation, *viz.* "My will further is, that my sons shall not either of them sell or dispose of the land, which I have herein given to each of them, from their lawful male issue ; and in case either of my said sons should die without lawful male issue, in such case, his land hereby given shall revert, and become the estate of my surviving sons, or their male issue" Upon the death of the testator, *Solomon,* the devisee, having lawful male issue, *viz. Caleb* the plaintiff and *Soloman,* jun., entered and enjoyed his share of the estate until the 2nd of *January* 1794 ; when he and his son *Solomon,* jun., by a quit-claim deed, in the usual form, remised, released, and forever quit-claimed all their right and title to the demised premises to *William Dart,* jun. and *Stedman Dart,* in fee ; and on the 8th of *August* 1794, the plaintiff, by a like deed, remised, released and forever quit-claimed all his right, estate, title and interest in the demised premises to the same releasees in fee. Under these releases the defendants claimed title. *Solomon,* the father of the plaintiff, died in *December* 1825. The defendants contended, that the will gave to *Solomon* a life estate in the premises, with remainder to his male heirs. They also claimed, that the plaintiff was estopped, by his deed, to assert a title in himself. The judge charged the jury, that the will gave an estate in tail male to *Solomon ;* that on his death, and not before, the title to the premises vested in the plaintiff ; and that consequently, the plaintiff, at the time he gave the quit-claim deed, had no title or interest in the premises ; and further, that the plaintiff was not estopped, by this deed, to assert a title in himself. The jury returned a verdict for the plaintiff ; and the defendants moved for a new trial, for a misdirection.

New-London,
July, 1828.

Dart
v.
Dart.

*Goddard* and *Isham,* in support of the motion, contended, 1. That by the will of *Roger Dart,* his son *Solomon* took an estate in fee simple.

2. That if *Solomon* did not take a fee, he took an estate for life, and his sons a vested remainder, if born at the time the will was made, or if unborn, it vested the moment a male child was born, defeasible if no such issue were living at his (*Solomon's*) death; and in that case, it would go to the surviving brothers as a contingent remainder. In the first place, it was the intention of the testator, that *Solomon* should have the use, during his life, but not to sell it away from his male issue; so that if he had male issue, they should have it; and if he died without issue, the surviving brothers would have it. Secondly, there are no words of procreation to give an estate tail.

3. That if either of these grounds are maintainable, *Caleb,* the plaintiff, had an interest, on which his release deed could operate, and which was thereby conveyed to the releasees.

4. That if this deed was inoperative as an instrument of conveyance, still the plaintiff is *estopped* to claim against it. It was executed and delivered by him *as a deed;* and the rule of the common law applies, that he shall not be permitted to aver or prove any thing in contradiction to what he has once so solemnly and deliberately avowed. 2 *Bla. Comm.* 295. So universal is this rule, that *fraud* only constitutes an exception. *Porter* v. *Hill,* 9 *Mass. Rep.* 34. *Bliss* v. *Thompson,* 4 *Mass. Rep.* 488. 490. But suppose a release, by the common law of *England,* does not constitute an estoppel; this deed, by the laws of *Connecticut,* does. By our own common law, a quitclaim or release deed is a primary or original instrument of conveyance. 1 *Swift's Dig.* 133. And though it is without covenants of seisin and warranty, it contains a covenant *not to claim any right or title to the premises.*

*Cleaveland* and *Gurley,* contra, insisted, 1. That the interest attempted to be conveyed, by the release deed of the plaintiff, was that of an inheritance before descent cast; and of course, no interest was vested in the releasees. Fee-simple and fee-tail estates are alike estates of inheritance; and it makes no difference, as it regards the present question, whether the estate of *Solomon* was in tail, or in fee-simple. The only interest *Caleb* had, when he gave the release, was that of *heir expectant,* whether in fee simple or fee tail; and in such case,

nothing passes by the deed. *Davis* v. *Hayden* & al. 9 *Mass. Rep.* 514. But it was, in truth, an estate in fee-tail male. *Dart* v. *Douglass*, in superior court, on the same will. *Doe* d. *Ellis* v. *Ellis*, 9 *East*, 382.

*New-London*, July, 1 28.

Dart
*v.*
Dart.

2. That a release deed will pass no interest not *in ssee* at the time the release is made. *Co. Litt.* 265 *a.* sect. 446. *Lampet's* case, 10 *Rep.* 51. *a.* *Quarles* & al. v. *Quarles*, 4 *Mass. Rep.* 680 688. *McCrackin* v. *Wright*, 14 *Johns. Rep.* 193. *Hastings* v. *Dickinson* & ux. 7 *Mass. Rep.* 153. 155. *Doe* d. *Blacksell* v. *Tompkins*, 11 *East* 185. *Davis* v. *Hayden* & al. 9 *Mass. Rep.* 514.

3. That there being no warranty in the deed, it will not operate as an estoppel. *Co. Litt.* 265. *a. b.* sect 446. *Doe* d. *Blacksell* v. *Tompkins*, 11 *East* 185. *McCrackin* v. *Wright*, 14 *Johns. Rep.* 193. The deed contains no apt or effectual words to make a warranty. *Bac. Abr. tit* Warranty. C.

PETERS, J. This case presents three questions. 1. What estate did *Solomon Dart* the elder take under this devise? 2. What estate passed from the plaintiff to the releasees? 3. Is the plaintiff estopped, by his deed to them?

To answer the first question, we must ascertain the intention of the devisor; and this can be learned only from his will. His first object seems to have been, to provide for his sons, during their lives; the second, to perpetuate his estate in his name and family. This, according to the notions of those days, could be effected only by an entailment. He therefore used expressions, which have always been understood to create an estate tail. In the first place, he created an estate of inheritance in his sons. He then forbade their selling it away from their lawful male issue. And lastly, he provided, that if either of his sons should die without such issue, his land should revert, and become the estate of his surviving sons, or their male issue. This completed the entailment in perpetuity, according to his views; though not according to the modern decisions. *Chappel* v. *Brewster, Kirby* 175. *Hamilton* v. *Hempstead*, 3 *Day* 332.

But the defendants claim, that *Solomon*, the devisee, took an estate in fee simple, conditional or in remainder. I am satisfied, upon the authority of many adjudged cases, both *English* and *American*, that he took an estate in tail male general. A reference to a few, which seem to run "*quatuor pedibus*" with the case at bar, will remove all doubt.

*New-London.*
July, 1828.

Dart
*v.*
Dart.

"If land," saith *Perkins, (sect.* 173.) "be given by deed unto *J. S. et si contingat ipsum obire sine hærede de corpore suo, quod tunc revertat,* to the donor and his heirs, without any *habendum* in the deed, the donee hath an estate tail."

In *Webb* v. *Hearing, Cro Jac.* 415. the testator devised thus: "To *F.*, my son, my houses in *L.*, after the death of my wife; and if my three daughters, or either of them, do overlive their mother, and their brother and his heirs, then they to enjoy the houses for the term of their lives, remainder to my sister's sons," &c. The court resolved, that he had but a fee tail; for by heirs, in this place, i· intended heirs of the body.

So in *Sonday's* case, 9 *Rep.* 127. the testator devised his house to his wife for life, and after her death, his son *William* to have it; and if *William* marry, and have issue male lawfully begotten, then his son to have it; remainder to his other sons successively, *totidem verbis;* and then adds, "If any of his sons, or their heirs males issue of their bodies go about, at any time to alienate or mortgage the house, then the next heir to enter and enjoy it." It was resolved, by the two chief justices and the court of wards, that the sons have an estate tail, to them severally and to the heirs male of their bodies.

In *Price* v. *Smith, Willes' Rep.* 1. the testator devised his estate to his son *Philip* in fee, on condition that he pay £30 to his son *William*, under this limitation, *viz.* "In case any of my said children, unto whom I have bequeathed any of my real estate, shall die without issue, then I give the estate of him or them so dying unto his or their right heirs." "It cannot be doubted," said the court, "after so many solemn resolutions, but that if a man devise an estate to *A.* and his heirs, and afterwards in his will give his estate to another, in case *A.* die without issue, the subsequent words reduce *A.*'s estate only to an estate tail, and restrain the general word *heirs* to signify only heirs of the body. *Vide Altham's* case, 8 *Rep.* 154. *b.* and *Dean* d. *Slater* v. *Slater,* 5 *Term Rep.* 335 and cases there cited.

In *Doe.* d. *Ellis* v. *Ellis,* 9 *East,* 382. the testator devised his estate thus: "To my son *Joseph,* his heirs and assigns; but in case my son shall die without issue, then I give and devise the same to the child or children with which my wife is now *ensient,* his heir" &c. Lord *Ellenborough* said: "The estate being at first given to *Joseph,* his heirs &c. forever, would have given him the fee. But the premises, however large, may be restrained by the context, as premises however narrow, may

be enlarged by it.    Here then, the testator goes on to say, that in case *Joseph* should die without issue, then he gives it over, which clearly gives *Joseph* only an estate tail." And *Grose,* J. said : " It is impossible to read this will, without seeing, that the testator intended, that if *J.* has issue, that issue should take ; and if he died without issue, the issue of which his second wife was *ensient,* should take the estate ; and this intention could only be effectuated, by giving *J.* an estate tail."

In *Hurlburt* v. *Emerson,* 16 *Mass. Rep.* 241. the testator devised part of his estate to his son *John,* subject to the payment of certain legacies, adding, " that in case my son *John* should leave no male issue, then one half of the above bequests to be equally divided among his children, and the other half among all my surviving children."    The court unanimously decided, that the devise to *John,* was an estate in tail male general.

The same point has been more than once decided in this state.

In *Dart* v. *Douglass,* which was an action for another parcel of the same devise, the same question arose ; and it was decided, by the superior court, in *January,* 1816, whereof the late Chief Justice was one, that the devisees took an estate tail. This decision, though not binding on this court, is entitled to great respect.

In *Peters* v. *Loomis,* in 1800, the case was thus.   In 1758, *John Thompson* devised his estate to his five children in fee, and added this clause : " If any of my said children shall die, his, her or their share, *if heirless,* shall be equally divided among my surviving children."   *Ann,* a daughter, married, and died without issue, in 1798: the plaintiff was the only survivor,—the rest having previously died leaving issue.   The superior court decided, that by *heirless,* the testator meant *without issue,* and that the plaintiff was entitled to recover

2.  What estate passed from the plaintiff, by his deed to the releasees ?   By the common law, a release is a secondary conveyance, and is a discharge of a man's right in land or tenements to another, who hath some former estate in possession. *Shep. Touch.* 318.   2 *Bl. Com* 328   But in this state, a release is considered as a primary conveyance, and passes all the right of the releasor to the releasee, provided no other person be in possession adversely ;   and operates as a conveyance without warranty.   1 *Sw. Dig.* 133.   But if he have no right, nothing

passes, not even a *chose in action.*    What estate, then, had the issue of the first donee in tail, during *his* life ?    My answer is, non.    The plaintiff could, therefore, convey none.    Such issue is only an heir apparent or presumptive.    His title is the bare possibility, or mere chance, of becoming *eventually* the heir in tail; for the maxim is, " *nemo est haeres viventis.*"    And it is a well settled rule, that a mere possibility cannot be released or conveyed ; and the reason thereof is, that a release supposes a right in being.    *Shep. Touch.* 319.    *Bac. Abr. tit. Release.* H.    Hence, it is holden, that an heir at law cannot release to his father's disseisor, in the life-time of the father ; for the heirship of the heir is a contingent thing ; for he may die in the life-time of his father.    *Ibid.*    This question was indefeasibly answered, by our great master *Littleton,* nearly four centuries ago.    " If there be father and son, and the father be disseised, and the son (living the father) releaseth by his deed to the disseisor, the right which he hath, or *may have,* in the tenements, without clause of warranty, and after the father dieth, this son may lawfully enter upon the possession of the disseisor ; for that he hath no right in the land in his father's life-time, but the right descended to him after the release made, by the death of his father ; for no right passeth by a release, but the right which the releasor hath, at the time of the release made ; and if he hath no right, the release is void."    *Littleton, sect.* 446.    *Lampet's* case, 10 *Rep.* 51. *a.*    " And in some cases," saith *Sheppard, (Touch.* 321.) "a release, like a confirmation, doth enure by way of abridgment.    But a man cannot bar himself of a right that shall come to him hereafter ; and therefore it is held, that these words used in releases, *quæ quovis modo in futuro habere potero,* are to no purpose."    This is a mere quotation from the text of *Littleton, (ubi supra)* which is there sanctioned, by the commentary of Sir *Edward Coke.* " But here, in the case which *Littleton* puts, where the son releases in the life-time of his father, this release is void, because he hath no right at all, at the time of the release made, but all the right was at that time in the father ; but after the decease of the father, the son shall enter into the land against his own release.    1 *Inst.* 265 *a.*    And we are informed, by Lord Chief Justice *Trevor,* in delivering his opinion in *Arthur* v. *Bokenham, Fitzgib.* 234. that this text of *Littleton* had never been contradicted.    *Hargrave's* Notes on *Co. Litt.* 265. *a.* n. 212. The same doctrine was recognized, by the supreme court of

*New-York*, in *McCrackin* v. *Wright*, 14 *Johns. Rep.* 193. wherein *New-London,* it was decided, that no title, not *in esse*, would pass by a deed of _____ bargain and sale and quit-claim, unless it contain a warranty, in which last case, it will operate as an estoppel. And in *Davis* v *Hayden* & al. 9 *Mass. Rep.* 514. it was decided, that nothing passes by a conveyance of land, of which the grantor is only heir apparent.

*New-London,*
July, 1828.

Dart
*v.*
Dart.

3. Is the plaintiff estopped to claim against his own deed? This question is already answered, by the citations from *Littleton, sect.* 446. and the case in 14 *Johns. Rep.* 193. " If there be a warrantie," saith Lord *Coke*, (1 *Inst. ubi supra*) " annexed to the release, then the sonne shall be barred ; for albeit the release cannot barre the right, for the *cause aforesaid*, yet the warrantie may rebut and barre him and his heirs of a future right." But the deed in question, is a mere release or quit-claim, and contains no warranty, express or implied.

I, therefore, do not advise a new trial.

LANMAN and DAGGETT, Js., were of the same opinion.

HOSMER, Ch. J., having heard the case argued in part only, gave no opinion.

BRAINARD, J. was absent.

New trial not to be granted.