## Case No. 3,782.

### DE MILL et al. v. LOCKWOOD.

[3 Blatchf. 56.][1]

Circuit Court, S. D. New York. Sept. Term, 1853.

ACTION TO RECOVER LAND—EQUITABLE ESTOPPEL—ENTAILED LANDS—LEGISLATIVE RELEASE.

1. What considerations, by way of equitable estoppel, will not operate to prevent a recovery by a plaintiff, in an action at law to recover the possession of land.

2. A., by his will, devised land to J., for life, and, after J.'s death, to P. and the heirs male of P.'s body. After J.'s death, P. conveyed his interest in the land to M. By his will, M. devised his interest in it to the then children of the said P., one of whom was T., an heir male of P.'s body. Afterwards, by a resolution of the legislature of Connecticut, Q., the guardian of those children, was authorized to sell and convey, for their benefit, their interest in the land under the devises. The resolution declared the estate to be a fee simple. Q. made a conveyance under the resolution. Afterwards, P. died: *Held*, that the legislature had authorized the conveyance of the right which would belong to the children, as P.'s issue, on his death; and that, by the conveyance by Q., T. was divested of all title to the land under the will of A.

3. Semble, that the fee tail given to P. by the will of A., became, by such resolution, a fee simple in the said children, and passed by the conveyance made by Q., so as to bar the rights of heirs male of P.'s body who were born after the conveyance by Q.

4. At the time of the passage of the resolution, the legislature exercised judicial powers; but, whether the resolution is to be regarded as a judicial decision, quaere.

This was an action [by Thomas A. De Mill and others against Augustus Lockwood] for the recovery of a tract of land situate in Stamford. The plaintiffs, four in number, were the children and the only heirs male of Peter De Mill. The title to the land was originally in Anthony De Mill. He, by his will, made the 15th of July, 1790, devised the land to his nephew Joseph De Mill, for life. At his decease, the land was given by the will to Peter De Mill, a son of Anthony, and to the heirs male of his body. The will was admitted to probate on the 13th of August, 1790. Joseph died in the year 1800. Peter died in July, 1852. One of the plaintiffs, Thomas A., was born in 1799, one in 1804, one in 1807, and one in 1811. On the 21st of July, 1798, Peter conveyed to Mary Arnold all the right, title, and interest which he had in the premises, without stating what that right was. There was, in the deed, a covenant that he had good right to convey the same. Mary Arnold, by her will, made on the 24th of October, 1800, devised all her right and interest in the premises, to "the children of Peter De Mill." Mary Arnold died early in 1801. In October, 1801, Peter Quintard was appointed guardian of the children of Peter De Mill who had then been born, namely Thomas A., two daughters, and a son who died in 1839. As such guardian, he present-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

ed his petition to the legislature of the state, in which he alleged, that his wards were the owners in fee of the premises, by devises from Anthony De Mill and Mary Arnold, and prayed for power to sell, for the benefit of his wards, all the right, title, interest and claim which they derived under either of those devises. The legislature passed a resolution authorizing Quintard, as such guardian, to sell, for the benefit of his wards, all the right, claim and interest which they acquired to the premises by virtue of those devises, and, in that resolution, declared the estate which it authorized to be sold, to be an estate in fee simple. At that time, the legislature exercised not only legislative but judicial power. In pursuance of that resolution, Quintard, as such guardian, on the 10th of April, 1802, sold the interest of his wards in the land to David Holly. On the same day, Holly sold all his interest to Isaac Ambler; and, on the 1st of April, 1809, Ambler conveyed to the defendant. Ever since that date, the defendant had been in possession of the premises, claiming them as his own, and had made extensive improvements on them, adding greatly to their value. At the trial, evidence was offered by the defendant tending to prove, that Quintard was paid the full value of the land; that that full value was paid to the plaintiffs when they became of age; that they received it, knowing that it was the avails of the land; that they still kept it; that they knowingly permitted the defendant to go on making improvements on the land, supposing it to be his own, without telling him of their claim; that Peter De Mill died in the city of New York, where he was domiciled, and had been for several years, leaving a will; and that, by that will, he devised real and personal estate of some value, in that city, to the plaintiffs.

Charles Hawley and Henry Dutton, for plaintiffs.

Thomas C. Perkins and Thomas B. Butler, for defendant.

INGERSOLL, District Judge, in submitting the case to the jury, charged them as follows:

The plaintiffs, if there were nothing else in this case but the will of Anthony De Mill, would be entitled to the property in question, in fee simple. For, the statutes of this state have declared, that every estate given in fee tail shall be an absolute estate in fee simple, in the issue of the first donee in tail. The plaintiffs would, therefore, be entitled to a verdict, to recover possession of the premises.

It is urged, however, by the defendant, that, in the year 1802, the fee of the land was attempted, at least, to be sold by Quintard, the then guardian of Thomas A., one of the plaintiffs, and of the other children of Peter who had then been born, by virtue of power given to him by the legislature;

that a deed of the land was given by Quintard to Holly, from whom the defendant claims; that Quintard was paid the full value of the land; that that full value was paid to the plaintiffs and their sisters, with their consent, when they became of age; that they received that full value, knowing it was the avails of the land sold by Quintard; that they keep that full value; that the plaintiffs have knowingly permitted the defendant to go on making improvements on the land, supposing it to be his own, without telling him of their claims; and that, therefore, the plaintiffs are now estopped from saying, either that the power with which the legislature invested Quintard was a defective or invalid power, or that it was defectively executed. Whatever the rule might be in a court of equity (and it is not necessary to decide what the equity rule would be), these facts would not, in a court of law, estop the plaintiffs from saying, that the power which was given to Quintard by the legislature, to convey the right which was acquired by the plaintiffs or either of them, under the will of Anthony, or the fee of the land, was an invalid power for that purpose, or that it has been defectively executed. The defendant further urges that, in the deed of July, 1798, from Peter to Mary Arnold, there are certain covenants which are binding upon the plaintiffs, as his heirs at law; and that, in consequence of the covenants in that deed, and of the devise to the plaintiffs under the will of Peter, the plaintiffs cannot now claim the land. But these facts, even if they were as claimed by the defendant, would not, in law, deprive the plaintiffs of the right to demand the land.

The defendant also urges, that he has held the land adversely ever since the year 1809, claiming it as his own, and denying all right of every one else to it; and that such adverse possession, under such a claim of right, gives him, in law, a title to it. If any one, having no right to land, enters upon it and holds it adversely, claiming title to it as against all the world, the person who has the actual title and the present right of possession, will after the lapse of fifteen years, be deprived of all title, if, for that fifteen years, he permits such adverse possession, without exercising his right of possession. This is the general rule. There are certain exceptions to it, in favor of individuals under certain disabilities, which it is unnecessary to specify. If, then, the defendant has had possession of the land between forty and fifty years, claiming title to it, and denying the right of every one else, the question arises: Did the plaintiffs, for a period of fifteen years of such adverse possession, have the right to the immediate possession, and permit the defendant, for that period, to exercise that right, without exercising it themselves? If they did, then their title is gone.

By the will of Anthony De Mill, neither of

the plaintiffs had any right of possession, until the death of Peter De Mill, in 1852. The right of possession, after the death of Joseph De Mill, was in Peter. By his deed to Mary Arnold, in 1798, that right in Peter became vested in her. By her devise, which took effect early in 1801, to Thomas A. De Mill, one of the plaintiffs, and the other children of Peter who were then born, the right of possession, which, by the deed from Peter to Mary Arnold, was vested in her, became vested in Thomas A. and the other devisees named in her will. Then, if there were nothing else in the case, the right of immediate possession would, from about the year 1801, have been vested in Thomas A. and the other devisees named in the will of Mary Arnold. As, then, Thomas A. would, for more than fifteen years after he became of age, have permitted the defendant to exercise the right of possession to the land in question, claiming it as his own, without exercising the right which he, Thomas A., had, the defendant would, as against him, have the right to the land. But there is a deed, executed in 1802, from Quintard, as guardian of Thomas A. and the other devisees in the will of Mary Arnold, made by virtue of a resolution of the legislature; and, if that deed conveyed the life-right which Peter had under the will of Anthony, and which became vested in Thomas A. and the other three devisees in the will of Mary Arnold, by virtue of that will, and that life-right only, then, after that deed, during the life of Peter, there was no right of possession in Thomas A. Under those circumstances, no adverse possession by the defendant would affect Thomas A.'s present legal title, for the reason that, from the time such adverse possession commenced, up to the time of the death of Peter, in 1852, there was no right of possession in Thomas A. The plaintiffs admit that, at least, that life-right was conveyed by that deed, though they deny that any thing more than such life-right was conveyed. But, it is claimed by the defendant, that the deed executed by Quintard to Holly, in pursuance of the resolution of the legislature, will prevent a recovery in this action; and the court is of opinion, that that deed affords to the defendant a complete defence in this suit.

There are several reasons urged on the part of the defendant, why that deed will deprive the plaintiffs of the right to recover in this action:

1. It is admitted that, if any one of the plaintiffs has no title to the land in question, though the other plaintiffs may have the whole title, no recovery can be had in this action. To entitle the plaintiffs to a verdict, all the plaintiffs must have a right to demand the possession. And it is claimed by the defendant that, at all events, the resolution of the legislature authorized Quintard to sell all claim which Thomas A. had to the land in question under the will of An-

thony; and that, after the deed from Quintard was executed, Thomas A. could have no right under that will. It is admitted by the plaintiffs that, after that deed, Thomas A. could have no claim under the will of Mary Arnold. But they deny that he was, by that deed, deprived of the right which he had under the will of Anthony. They say that what he took by the will of Anthony, was not a right that could in law be conveyed by deed; that it was a mere possibility, a mere expectancy, during the life of Peter, a mere capability of inheriting, without any rights of property attaching to it, so long as Peter should live. The estate given to Peter by the will of Anthony, was an estate tail male. That estate, upon the death of Peter, he leaving male issue, would, in such issue, become an estate in fee simple. During the life of Peter, his issue had no interest in the land which could, in law, be conveyed by deed. Such was the common law, and the legislature had never, by any general law, altered the common law in this respect. It is admitted, that the legislature could, by a general law, alter the common law in this respect, and authorize the issue of the tenant in tail to convey by deed the right or claim which would belong to him, as such issue, or the possibility to which he was entitled, as such issue. It is claimed by the defendant, that, by the resolution of the legislature, in this particular case, they authorized that to be done. And such is the opinion of the court. The legislature could, by a general law, authorize it to be done. They could, by a particular special law, authorize it to be done in a particular case. They adopted the latter course. After that resolution of the legislature, and the deed from Quintard which followed it, Thomas A. could, at no time, claim any title to the land by virtue of the will of Anthony. He, therefore, has no present right to the land, and there can be no recovery in this case, whatever the rights of the other plaintiffs may be.

2. It is also claimed by the defendants, that, by virtue of the proceedings had before the legislature in October, 1801, the estate tail given to Peter by the will of Anthony, and which estate had, by the devise of Mary Arnold, vested in the four children of Peter then living, became in them an estate in fee simple; that, as what they had was sold and conveyed by the deed of Quintard, the fee simple to the land was conveyed; and that, as a consequence, none of the plaintiffs have any right to the land. It has already been decided that Thomas A. has no right to the premises, and that, therefore, there can be no recovery in the present action. It is not necessary, therefore, for the purposes of the present case, to decide the question whether the other plaintiffs would have any right to the land in controversy. But, as the determination of this latter question may be desirable to the parties contesting, in reference to any contemplated future proceedings, I will express my views in regard to it. The resolution of the legislature which authorized the sale of the land, called that which was to be conveyed a fee simple, and authorized Quintard to convey a fee simple. The legislature would have had a right, by a general law, to declare every fee tail to be a fee simple in the tenant in tail; and, after such general law, an estate in fee tail would, in the tenant in tail, be converted into a fee simple. Such was the course adopted several years ago by the legislature of the state of New York. The legislature, by so doing, would not take any right of property from any one and vest it in another. They would not take any strict legal right from any one. For, the issue of the donee in tail, has no strict legal right until after the death of such donee. During the life of such donee, such issue has no right in the entailed estate which can be conveyed; but only a possibility or expectancy or capability of inheriting. He has no right to convey; and, by the common law, such issue may, in various ways, without any act done by him, or any act left undone by him, be deprived of that possibility or expectancy. The legislature have a right, at all times, by general law, to change the course of the inheritance, and deprive such issue of the capability of inheriting. If, then, the legislature had, in the year 1801, as was done by the legislature of the state of New York a few years previously, passed a general law, declaring all fee tails to be fee simples, that which Peter took by the will of Anthony, and which had become vested, by the will of Mary Arnold, in the four children of Peter then living, would, in them, have become a fee simple. If this could be done by a general law, it could be done by a particular special law. And the proceedings had before the legislature may be considered as a particular special law, by which the fee tail which was given to Peter by the will of Anthony, and which was then vested in those four children, became in them a fee simple. As, therefore, what they had a right to was sold by the deed of Quintard, it follows that the fee simple was sold; and that, consequently, none of the plaintiffs have any right to the land.

3. Another reason urged by the defendant, why the deed from Quintard deprives the plaintiffs of the right to recover the land is, that the proceedings had before the legislature in October, 1801, became a judicial decision, binding upon all the world, establishing the estate to be conveyed to be a fee simple. In 1801, the legislature exercised judicial as well as legislative powers. But, it is not deemed necessary to determine this last question. Enough has been said to show that the plaintiffs have no right to the demanded premises, and that there must be a verdict in favor of the defendant.