ALBERT F. SUTTON & another *vs.* ALVORD O. MILES.

S. devised real estate to his wife as long as she remained unmarried, and after her death or marriage, " in fee to my son A., provided he shall leave children the issue of his body, but if he has no heirs, he, the said A. and my wife E., shall have the right to sell any property, real or personal, for their support so long as he, A., lives, or the said E. remains my widow, and after their death the remainder of my property, if there is any, I give and bequeath to my son B., to him and his heirs forever, provided the aforementioned contingencies should happen, viz., the death of my wife E. and the death of A. without issue." *Held*, that the will created an estate tail in the realty so devised A.

*Held, further*, that the power given to A. and E. to sell, being over a limited portion of the estate and for a definite purpose, did not in this case enlarge the estate to a fee simple.

The devise of the remainder of the testator's property, after the death of his wife and his son A. without issue, *held* to be a remainder to take effect on the determination of the estate tail.

Under the provisions of Rev. Stat. chap. 145, § 3, a tenant in tail in remainder, with the concurrence of the life tenant, may bar the entail in the manner prescribed in said statute.

BILL IN EQUITY for specific performance of a contract for the purchase of certain real estate. The bill alleged that the complainants, Elizabeth Sutton and Albert F. Sutton, were respectively the widow and son of William Sutton, deceased, the said Elizabeth never having married again since the decease of her said husband. That said William Sutton died in 1853, leaving a last will and testament, which was duly admitted to probate, by the eighth clause of which (which is set out in full at the commencement of the opinion of the court) he devised to the complainants certain real estate, of which, at the time of making his will and at the time of his decease, he was seised and possessed in his own right in fee simple. The bill further alleged that the respondent, by his contract in writing dated June 15, 1872, agreed to purchase of the complainants a portion of the real estate so devised to them, for the sum of two thousand dollars, payable upon delivery by the complainants to the respondent of a full warranty deed and perfect title of said real estate, with release of dower by the wife of said Albert F. Sutton; that the complainants had offered to the respondent their deed of said estate according to the terms of said agreement, and demanded payment of said purchase money, but that the respondent refused to accept said deed or complete the purchase by payment of said purchase money, alleging that by the terms of

the devise to the complainants they had not, and could not by their said deed make to him, a perfect and indefeasible title in fee simple to said estate, the said Albert F. Sutton now having a child living, though none at the time said will was made. The bill prayed that the respondent might by decree be compelled to accept the deed and title aforesaid, and complete the purchase by payment to the complainants of said purchase money. To this bill the respondent demurred generally.

*Carpenter*, for the respondent, in support of the demurrer.

*James Tillinghast*, for the complainants, *contra.* Under the eighth section of the will of William Sutton, the complainant, Elizabeth Sutton took an estate for life, and the complainant, Albert F. Sutton, a vested estate tail in remainder, expectant immediately upon the death of the life tenant. *Doe d. Simpson* v. *Simpson*, 5 Scott, 770; *Doe d. Jearrad* v. *Bannister et al.* 7 M. & W. 292; *Raggett* v. *Beaty*, 2 Moore & P. 512; *Parkman* v. *Bowdoin et al.* 1 Sumner, 359; *Wood* v. *Baron*, 1 East, 259; *Broadhurst* v. *Morris*, 2 B. & Ad. 1; *Nightingale* v. *Burrell*, 15 Pick. 104; *Doe d. Jones et al.* v. *Davies*, 4 B. & Ad. 43; *Doe d. Comberback* v. *Perryn*, 3 T. R. 493.

This, as the above authorities show, would be the construction of this will aside from the power to sell contained in this clause, and this power to sell (confused as it is) strengthens, if it does not necessitate the construction. And by the concurrence of the present complainants, Elizabeth Sutton as life tenant, and Albert F. Sutton as the next immediate tenant in tail, this estate tail may now be barred. *Goodtitle* v. *Duke of Chandos*, 2 Burr. 1065; *Holland* v. *Cruft, Administrator, et al.* 3 Gray, 184.

POTTER, J. The question in this case arises on the will of William Sutton, who died in 1853, the eighth clause of which is as follows: " I give and bequeath to my beloved wife, Elizabeth Sutton, the improvement of all the remainder and residue of my estate both real and personal, of whatsoever name and nature or wherever situated, so long as she remains unmarried, and after her death or marriage, I give the same in fee to my beloved son, Albert Ferdinand Sutton, provided he shall leave children the issue of his body; but if he has no heirs, he, the said Albert Ferdinand Sutton, and my beloved wife, Elizabeth Sutton, shall have the right to sell any property, real or personal, for their

support, so long as he, Albert Ferdinand Sutton, lives, or the said Elizabeth Sutton remains my widow; and after their death the remainder of my property, if there is any, I give and bequeath to my beloved son, Bowen Sutton, to him and his heirs forever, provided the aforementioned contingencies should happen, viz., the death of my wife, Elizabeth Sutton, and the death of Albert Ferdinand Sutton without issue." The widow and Albert F. Sutton are living.

By the first clause he devises lands to his wife for life, or until marriage, and after her death or marriage " I give and devise the same in fee to my beloved son, Albert Ferdinand Sutton, provided he shall leave children, the issue of his body; but if he has no heirs, he, the said A. F. S., and my beloved wife Elizabeth Sutton, shall have the right to sell any property, real or personal, for their support, so long as he, A. F. S., lives, or the said E. S. remains my widow."

The technical language to create an estate tail is to limit the estate to a man and the heirs of his body, but in wills it may also be created by language by which this is implied. In this case it is evident that the words children, issue, and heirs, were in the testator's mind synonymous. Strictly speaking, and using the word in its technical sense, no person can be said to die without *heirs;* but from his use of the words children and issue, it seems plain that by heirs the testator means heirs of his body, *i. e.* a child or children, or the issue of a child or children, living at the death of said Albert. And besides, it seems to be well settled that where this language, *dying without heirs,* is used, in case the remainder is given to a stranger, it may be construed to be a fee simple in the first taker, and so the remainder void as being a fee upon a fee; but if the remainder over be to a person who would be a collateral heir of the first taker, or to the heirs of the testator, provided they be also heirs of the first taker, this shows what heirs the testator intended, *i. e.* heirs of the body of the first taker: and it will be construed to be an estate tail. 6 Greenleaf's Cruise, *237, tit. 38, ch. 12, §§ 20–23, and cases there cited; Hawkins on Wills, *177.

Our statute does indeed provide that " no person seised in fee simple shall have a right to devise an estate in fee tail for a longer time than to the children of the first devisee." Very few

states we believe have provisions similar to this, first enacted here in 1798. The provision in the New Jersey act of August 26, 1784, seems similar in effect. And in 1784, Connecticut also provided that "no estate . . . . shall be given by deed or will to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and every estate given in fee tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail." Conn. Revision of 1784, p. 3 ; Conn. Laws, 1838, p. 389. And Judge Swift (System, 1st ed. 1796, vol. 1, p. 247) says this had always been the common law of Connecticut. See *Hamilton* v. *Hempsted*, 3 Day, 332–338; *Wells & Wife* v. *Olcott*, Kirby, 118 ; *Allyn* v. *Mather*, 9 Conn. 127. Our Rhode Island statute seems to have a similar object with that of Connecticut. But the Rhode Island statute affects wills only.[1]

An estate tail created by will is by our Rhode Island statute limited in its duration, but while it endures it is still an estate tail. In this case the person contemplated by the statute as the first devisee is Albert, the first devisee in tail. If it is an estate tail in any one, it must be in him. To construe the life tenant to be the first devisee intended by the statute is evidently unreasonable. In that case there would be no estate tail in any one even for a moment. It is therefore an estate tail in Albert, so far as to conduct it to his children. Whether it is an estate tail in them to conduct it to their children, it is not necessary now to decide ; but the analogy of the cases which restrain the creation of perpetuities to a life or lives in being, &c., &c., would seem to be against it. And the general feeling of the time when these statutes were passed was against perpetuities. But we cannot see that this provision in our statute of wills in any way affects the construction of the language which has always heretofore been construed by the courts to give an estate tail to a devisee.

Secondly, what is the effect of the words giving a power to his son Albert and wife Elizabeth to sell? This provision is most

---

[1] It is well known that a portion of the Rhode Island statute of descents of 1798 was taken from Connecticut. And it is a significant fact, that the list of subscribers to Judge Swift's System, published 1795–96, includes the names of many of the leading and influential lawyers and politicians in Rhode Island at that time.

bunglingly drawn, and might well be held void for its uncertainty. The power is to Albert *and* Elizabeth, and is for the support of his widow and son, but cannot be exercised until the death of the son, &c., when of course he would need no support. But while a devise with an absolute power of sale might be held to enlarge an estate to a fee simple, it cannot have that effect in this case. The power here is over a limited portion of the estate, and for a definite purpose. *Ramsdell* v. *Ramsdell*, 21 Maine, 288 ; *Jackson* v. *Robins*, 16 Johns. 537 ; *Waring* v. *Middleton*, 3 Des. 249 ; 6 Greenleaf's Cruise, *227 n, *256, § 5.

By the last provision, after the death of his wife and the death of his son Albert without issue, " the remainder of my property, if there is any, I give and bequeath to my beloved son Bowen Sutton, to him and his heirs forever." Is this an executory devise or a remainder ? Having held the estate of Albert to be an estate tail, according to all the authorities this must be held to be a remainder, to take effect on the determination of the estate tail. 6 Greenleaf's Cruise, *369 ; *Nightingale* v. *Burril*, 15 Pick. 104 ; and see *Manchester* v. *Durfee*, 5 R. I. 549 ; *Cooper* v. *Cooper*, 6 R. I. 261 ; *Jillson* v. *Wilcox*, 7 R. I. 515.

The only remaining question is what conveyance will make such a title to the defendant as he should be obliged to take ? By the old law of England, and which was for some time in force in this state, an estate tail and any subsequent interests could be barred by a common recovery in the courts. Examples of this are found on our old court records.

In order that this proceeding should bar the issue and all subsequent interests, it was necessary that the tenant of the freehold should be a party ; and therefore tenant in tail, in remainder, could not create a perfect bar without joining the freeholder. Ld. Mansfield in *Taylor ex dimiss. Atkins* v. *Horde et al.* 1 Burr. 60, 115, 116, citing Pigott on Com. Receivers, 7–10. And in that case it is stated by counsel *arguendo*, p. 97, that it had been a common practice for tenant for life to surrender conditionally to the remainder-man in tail, in order to give him an opportunity to bar the entail. Coke Lit. 362 *a ;* 2 Thomas's Coke, 726, See also *Goodtitle ex dimiss. Bridges et al.* v. *Duke of Chandos*, 2 Burr. 1065, 1072 ; 2 Black. Com. 362 ; Preston on Conveyancing, 1, 16, 73, 107, 139 ; Preston's Tracts on Cross Remainders, &c. 34 ; *Careswell et al.* v. *Vaughan*, 2 Saund. 42 *a*.

But our statute of 1798, and continued in force since, provides that a person *seised* of an estate tail may convey it in fee by a deed acknowledged in open court. Seisin, in the common law, was either in fact or in law. By seisin in law was intended a right to the possession, *e. g.* in case of descent, where the heir is said to be seised in law, to be perfected by entry. It was then extended to include trust estates. And although, from some of the ancient authorities, it might be doubted whether one could be said to be seised in law of a reversion or remainder, the more modern authorities, even in England, have extended the meaning of this language to include these expectant estates. 1 Greenleaf's Cruise, *406; 2 Ibid. *336; 3 Ibid. *380, *382; Fearne Cont. Rem. *298-9, n.; Smith on Exec. Interests, §§ 52, 55, 78 *a*, 87, 171; Watkins on Descents, 2d. ed. *27, *110; 1 Swift's System, 1st ed. 301. And in our country, especially in New England, a still more liberal construction has been given to the meaning of this word.

The question as to the construction of the word seised, in the Massachusetts statute of descents, came before Judge Story in the case of *Cook* v. *Hammond*, 4 Mason, 467, 489. Judge Story, after an examination of the authorities, holds that seisin is there used in the sense of ownership; 'that the statute intended to provide for the descent of all the intestate's estate (which on any other construction it would not); and that it had always been construed to make the land of a disseizee descend in the same manner as if the person died seised. And he further holds that the construction of the statute would be the same if the words *any right or interest* (which are not in our Rhode Island statute) had been omitted. And he says that the construction of the Connecticut statute has been the same.

Judge Reeve (Descents, 175) says actual seisin was never necessary in Connecticut to a devise. Our statute of wills provides that a person seised of a fee simple or fee tail may devise in fee. No distinction is made between an estate in possession or remainder. If the same construction is not given to the word here as has been given in Massachusetts, no person could devise a remainder which he was entitled to, either in fee simple or fee tail. Livery of seisin was formerly in use here, as our records show, but has been long out of use.

There are some American cases where the old English meaning of the word has been adopted, but we think the extended meaning more consistent with our laws and usages and with the rest of the common law as adopted here. Cases *supra*, and *Matthews* v. *Ward's Lessee*, 10 Gill & J. 443. The object of the statute was to provide a simpler mode of conveyance in place of the complicated and expensive common recovery, and it should receive a liberal construction to carry out this purpose.

Upon the ground that this conveyance is intended as a substitute for the common recovery, the tenant in tail and tenant of the freehold joining could bar the entail. *Holland* v. *Cruft, Administrator, et al.* 3 Gray, 162, 183. But we consider that giving a fair construction to the language of the statute, the tenant in tail in remainder has a sufficient seisin in law to convey his estate tail in the mode the statute requires. The object of the statute being to facilitate the conveyance can hardly be said to be effected, if he could not convey his own estate unless the life tenant would join with him. But both joining can make a complete title, and therefore the conveyance must be decreed.

A decree was entered in substance as follows : *Decree. That under the will of said William Sutton said Albert F. Sutton takes an estate tail in the lands devised by the eighth section of said will, and that said complainants Elizabeth Sutton together (the said Albert acknowledging the deed in proper form, to bar the entail according to the statute in such cases provided) can make a good title in fee simple to the estate aforesaid, and that the respondent, upon the tender to him of a deed from the complainants, executed and acknowledged as aforesaid, specifically perform his contract of purchase.*

NOTE. — In June, 1725, the General Court of Tryals was authorized to dock estates tail. An act of May, 1728, provided for recording them, and that they should not be reversed for want of form, and confirmed the forms then in use. In 1729 the same power was continued to the Superior Court, which succeeded the old General Court of Tryals. The records of many of these fines and recoveries are to be found in a separate book kept for that purpose, and now in the office of the Secretary of State. In 1730 York and Talbot, Attorney General, &c., of England, gave their official opinion addressed to the Lords of Trade, &c., that a fine on recovery had in England would not cut off an entail of land in a colony, unless so provided in the Colony law. (Public Notary Records in Office of Secretary of State, 1730, page 247.)

The colony laws for docking entails were repealed in June, 1737, and after

that special acts were passed for the purpose. See Schedules for February, 1749, June, 1750, &c. By act of June, 1754, they were required to be recorded in the town records. By act of February, 1760, the Supreme Court and Court of Common Pleas were authorized to pass fines and recoveries, and the law so continued to 1798. Estates tail were excepted from the Descent Act of 1798. In 1822 this exception was omitted.