Scott, Chief Judge.
The assignments of error in this case draw in question the relevancy of the deed of John Pollock, Sr., to his son, John Pollock, Jr., the grandfather of the plaintiffs, executed in 1807, and the legal effect of said deed, taken in connection with the other testimony and the facts admitted by the parties.
Plaintiffs claim that there is nothing in the terms of this deed to change the rights of the parties, as shown by the evidence on the first trial, under which it was held by the Supreme Court, in 17 Ohio St. 439, that the plaintiffs were entitled to judgment. But we think this is a mistake.
When the Supreme Court passed upon this case, as it was then presented, both parties were claiming under John Pollock, Jr., as the common source of their title, and it was not disputed that he held the title to the premises in fee-simple, at the time of his conveyance to his son James, in 1831.
And it was then held that, as the terms of this conveyance were “ to James Pollock, the heirs of his body, and assigns forever,” he took thereby an estate in fee-tail; and that he, being the first donee in tail, could not, under the laws of this state, by a sale and conveyance in fee-simple, with covenants of warranty, bar the entail, or deprive his issue of the right of succession to the inheritance at his death.
*94 It was further held that, by force of the statute of December 17, 1811, “to restrict the entailment of estates” (S. & C. 550), the plaintiffs, as the issue of the first donee in tail, upon his death, took the inheritance as an absolute estate in fee-simple. With these holdings, on the state of facts then presented to the court, we are entirely satisfied.
But now it is shown by the deed of 1807, offered in evidence by the defendant upon the last trial, that John Pollock, Jr.,, held the premises in controversy, by a deed in all respects similar to that by which he undei’took to convey them to his son James, in 1831; and therefore, at the date of the latter conveyance, he himself held the premises in fee-tail, and not in fee-simple. His title was acquired in 1807, and was subsisting as a tenancy in tail in 1811, when the act “ to restrict the entailment of estates ” was passed. This act provided, among other things, that “ all estates given in tail shall be and remain an absolute estate in fee-simple to the issue of the first donee in tail.” These terms are sufficiently comprehensive to embrace subsisting estates in tail which had been previously given, as well as those which might thereafter be created. Remedial statutes aré to be liberally construed, with a view to suppress the mischief at which they are aimed. And there is no reason to suppose that the legislature intended to tolerate the indefinite continuance of entailments then subsisting, whilst it acknowledged such perpetual impediments to alienation to he against public policy. The power of the legislature thus to convert subsisting estates tail into estates in fee-simple can scarcely be doubted. In fact, in many of the states of this country, every fee-tail is declared by statute to be a fee-simple in the tenant in tail. And this is no prejudicial interference with vested rights. The tenant in tail can have no cause for complaint, for he is simply benefited by the enlargement of his estate into a fee-simple. And his issue has no legal rights in the premises during the tenant’s life. The issue takes, if at all, by descent, as heir of the body, and the maxim is “nemo est hceres viventis.” The course of inheritance is always subject to legislative con *95 trol. De Mill v. Lockwood, 3 Blatchf. 56; Dart v. Dart, 7 Conn. 250.
But the statute of 1811 did not, in any manner, affect the tenancy in tail then held by John Pollock, Jr. It left him, as the first donee in tail, in the full enjoyment of all the rights, and subject to all the disabilities incident to that species of estates. Among those disabilities was the want of power to bar the entail, or cut off the heirs of his body from their right of succession to the inheritance at his death. Upon his decease, therefore, a right of entry accrued to the issue of his body; and their estate immediately became, by force of the statute, an absolute estate- in fee-simple, notwithstanding the-deed to James Pollock in 1831.
James Pollock then, as one of the issue of the first donee in tail, had a full power of alienation, as against his heirs, which he exercised by a sale and conveyance of the premises, with covenants of general warranty, to Emmanuel Hawn, in December, 1836. This conveyance estopped the grantor during his life, and must estop the plaintiffs, as his heirs, from claiming, as against the grantee or his assigns, the title which they now attempt to set up. This must be so, even if John Pollock, the first donee in tail, was living at the date of its execution.
At what time he died is not shown, either by the testimony, or the agreed statement of facts.
Counsel have discussed, at length, the effect of the rule in Shelley’s case; but we do not perceive any proper application which that rule can have to the facts of this ease. It is a mistake to suppose that the effect of that rule ever was to convert a fee-tail into a fee-simple.

Judgment of the District Court affirmed.

Day, Whitman, Whisht, and Johnson, JJ., concurred.