NATHAN WATERMAN *et al. vs.* BENJAMIN ANDREWS.

When a deed contains inconsistent clauses, courts in construing it will consider the whole instrument and the intentions of its maker, subject to the rules of law. If all its parts cannot stand, those will be rejected which oppose the maker's intentions. If its language can be interpreted in different ways, courts will look at the circumstances of its execution, and extrinsic evidence is admissible to enable them to do this. If the interpretation still remains doubtful, the deed will be construed in favor of the grantee.

A deed of partition between cotenants gave an area and boundaries, which latter excluded a part of the area. The area given agreed with the result found by adding together the grants made to the original owner and deducting therefrom the grants made by him. No reason appeared why any part of the area should have been retained as common property. The grantee of the deed of partition entered on and for more than twenty five years occupied the whole area.

*Held,* that the whole area passed by the deed of partition.

A reference in one deed to another "for a more particular description" of the premises conveyed, incorporates into the former whatever is contained in the latter.

In ejectment, if several plaintiffs join, all must be entitled to possession, otherwise by the general rule judgment must be given for the defendant.

This rule is not affected by Pub. Stat. R. I. cap. 230, § 1.

But this rule is modified by Pub. Stat. R. I. cap. 204, § 34, which provides "that no action shall be defeated by the misjoinder of parties, if the matter in controversy can be properly dealt with and settled between the parties before the court, and the court may order any party improperly joined in any action to be stricken out."

Hence, when, of several plaintiffs, only two were found entitled:

*Held*, that the court, on motion, would allow amendment by striking out the other plaintiffs.

*Held*, further, that this would be done, although the two plaintiffs had in the suit set up title to a larger tract, including the *locus* in dispute, which was inconsistent with the title which they were found to validly hold.

In ejectment, the defendant's plea of the title in himself through adverse possession, dispenses with further proof of ouster.

TRESPASS AND EJECTMENT. Heard by the court, jury trial being waived.

The case turned on the interpretation to be given to the following deed :

" Know all men by these presents, that we, William F. Waterman and Sophia Waterman, both of Cranston, in the County of Providence and State of Rhode Island and Providence Plantations, in consideration of a quitclaim deed to us made and the sum of one dollar to us paid by our brother, Nathan Waterman, of said Cranston, the receipt whereof we do hereby acknowledge, have remised, released, and forever quitclaim, and by these presents do remise, release, and forever quitclaim unto him the said Nathan Waterman, his heirs and assigns forever, all our right, title, claim, and interest in and to a certain tract of land, with the buildings and improvements thereon, situated in said Cranston, containing about forty six acres: bounded northerly and westerly on the Middle Road, so called, from Providence to East Greenwich, and on the Providence and Pawcatuck Turnpike Road ; easterly, partly on land of Thomas Grace, partly on land of Robert Grinnell, and partly on land of Philip Paine ; southerly, partly on land of said Grinnell and partly on land of said Paine, being the home estate of which our father died possessed.

" To have and to hold the same, together with all the privileges and appurtenances thereunto belonging, to him the said Nathan Waterman, his heirs and assigns forever.

" And I, Amey Waterman, wife of said William F. Waterman, for the consideration aforesaid paid as aforesaid, do hereby release and quitclaim my right of dower in and power of thirds in and to the premises aforesaid, to him the said Nathan Waterman, his heirs and assigns forever.

" In witness whereof we, the said William F. Waterman, Sophia Waterman, and Amey Waterman, have hereunto set our hands

and seals this twentieth day of March, A. D. one thousand eight hundred and thirty seven.

|   |   |   |
|---|---|---|
| " WILLIAM F. WATERMAN, | [L. S.] |
| " SOPHIA WATERMAN, | [L. S.] |
| " AMEY WATERMAN | [L. S.] |

" Signed, sealed, and delivered,
     in presence of

PHILIP PAINE,

JESSE HOWARD.

" Providence, Sc.    In Cranston, March 20, 1837, then William F. Waterman and Sophia Waterman severally acknowledged the foregoing instrument by them subscribed to be their voluntary act and deed.

" Before me, JESSE HOWARD, *T. Clerk.*

" Recorded March 20, 1837."

The facts involved are stated in the opinion of the court.

*December* 31, 1884.    MATTESON, J.    This is an action of trespass and ejectment, the facts in which, as they appeared on the hearing, were as follows, namely : On the 20th day of March, 1837, William F. Waterman, Sophia Waterman, and Nathan Waterman, the children of William Waterman, then deceased, were the owners of two farms, one known as the home estate of Christopher Waterman, then deceased, devised to them by him and containing about sixty five acres ; the other known as the home estate of their father, the said William Waterman, descended to them from him, and containing forty six acres.    It was agreed between them, that William F. and Sophia should have the Christopher Waterman farm, and that Nathan should have the William Waterman farm.    In pursuance of this agreement, Nathan, on the date named, quitclaimed to William F. and Sophia his interest in the Christopher Waterman home estate, and the said William F. and Sophia, on the same date, quitclaimed to Nathan their interest in the home estate of their father.    In each of these quitclaim deeds the consideration named was the other quitclaim deed and the sum of one dollar paid.    The description of the premises conveyed in the deed from William F. and Sophia to Nathan was as follows : " All our right, title, claim, and interest in and to a certain tract of land, with

the buildings and improvements thereon, situate in said Cranston, containing about forty six acres : bounded northerly and westerly on the Middle Road, so called, from Providence to East Greenwich, and on the Providence and Pawcatuck Turnpike Road ; easterly, partly on land of Thomas Grace, partly on land of Robert Grinnell, and partly on land of Philip Paine ; southerly, partly on land of said Grinnell and partly on land of said Paine, being the home estate of which our father died possessed."

The home estate of which their father, William Waterman, died possessed did contain forty six acres, that being the exact amount of his acquisitions by deed after deducting the amounts conveyed away by him, as appeared by the following list of conveyances received and made by him during his life, namely :

| | |
|---|---|
| By deed from Zuriel Waterman, dated September 13, 1783, he acquired one tract of . . . . . . . | 26 acres. |
| And one tract of . . . . . . . . | 4 " |
| By deed from Reuben, Elizabeth, and William Potter, dated December 7, 1787, he acquired . . . . . | 2½ " |
| Making . . . . . . . . . | 32½ acres. |
| By deed to Reuben and William Potter, dated December 7, 1787, he conveyed . . . . . . . . | 3½ " |
| Leaving . . . . . . . . . | 29 acres. |
| By deed from Zuriel Waterman, dated April 28, 1800, he acquired . . . . . . . . . . . | 23½ " |
| Making . . . . . . . . . | 52½ acres. |
| By deed to Zuriel Waterman, dated April 28, 1800, he conveyed . . . . . . . . . . | 6½ " |
| Leaving as his home estate, of which he died possessed . | 46 acres. |

This home estate included a tract of about two acres, which was a part of the land conveyed to said William Waterman by the deed above mentioned from Zuriel Waterman, dated September 13, 1783, and which formed the northeasterly portion of the farm and adjoined Mashapaug Pond. At the time of the conveyance from William F. and Sophia to Nathan in 1837, this tract was and ever has been separated from the rest of the farm

by the road or highway mentioned in the deed as the "Middle Road, so called, from Providence to East Greenwich." This tract of two acres is the *locus*, for the possession of which this suit is brought.

Sophia Waterman died January 27, 1840, intestate and without issue. The said Nathan and William F. survived her and were her heirs at law.

The said William F. Waterman died September 7, 1861, intestate. He left children, namely, Henry, Lydia, Elizabeth, Esther F., Olive B., William F., James, and Nathan.

Nathan Waterman occupied and retained the entire farm, including the tract in controversy, until his decease, with the exception of a piece containing one acre, more or less, being the southerly portion of the tract in controversy, which he conveyed to the defendant by deed dated May 1, 1861. He died intestate and without issue, October 1, 1862. His heirs at law were the children of William F. Waterman named above.

Of these children, Nathan, by deed dated March 18, 1863, Henry, by deed dated March 21, 1863, William F., by deed dated June 24, 1863, and James, by deed also dated June 24, 1863, quitclaimed to Nancy Waterman, the widow of Nathan, their respective interests in the land conveyed to him by William F. Waterman, Senior, and Sophia, by their deed above mentioned, dated March 20, 1837. Olive B. married John C. Grinnell; Esther F. married David J. Burgess. John C. Grinnell and Olive B. Grinnell, in her right, and David J. Burgess and Esther F. Burgess, in her right, by deeds dated February 26, 1863, quitclaimed all their interest in the land conveyed to Nathan Waterman, as aforesaid, to one Cottrell T. Wilcox. Lydia married John S. Aborn, and Elizabeth married Thomas L. Stadden. Henry Waterman, after making the deed to Nancy Waterman above mentioned, died leaving two children, Sophia, who married Thomas Sullivan, and Henry.

The descriptions in all the quitclaim deeds mentioned in the preceding paragraph were substantially the same as that contained in the deed from William F. Waterman, Senior, and Sophia Waterman, to Nathan Waterman, dated March 20, 1837, quoted above.

Nancy Waterman, widow of Nathan, by deed dated January 27, 1871, quitclaimed to Benjamin Andrews, the defendant, all her interest in and to the northerly part of the tract in controversy, being the whole of it which had not been previously conveyed to the defendant by her husband, by his deed, dated May 1, 1861, above mentioned.

The plaintiffs Nathan Waterman, William F. Waterman, James Waterman, Elizabeth Stadden, Esther F. Burgess, Olive B. Grinnell, and Lydia Aborn, are children of the above named William F. Waterman ; the plaintiffs Thomas L. Stadden, David J. Burgess, John C. Grinnell, and John S. Aborn, are the husbands, respectively, of the said Elizabeth, Esther, Olive, and Lydia. The plaintiffs Henry Waterman and Sophia Sullivan are the children of Henry Waterman, son of the above named William F. Waterman, Senior; and the plaintiff Thomas Sullivan is the husband of the said Sophia.

The plaintiffs contend that the tract of about two acres in controversy is excluded by the terms of the description in the deed from William F. Waterman, Senior, and Sophia Waterman, to Nathan Waterman, above quoted, from the land conveyed ; that the operation of that deed is to be restricted to the land included within the particular boundaries mentioned ; and that the addition of the general words, " being the home estate of which our father died possessed," cannot enlarge the grant beyond the particular description, which is specific and unambiguous. . The defendant, on the other hand, insists that those words have a controlling influence in the construction of the deed, and sufficiently indicate the intention of the makers to convey their interest in the entire farm.

It is laid down as a rule of construction, that where there are two clauses in a deed which are so repugnant that they cannot stand together, the former is to prevail over the latter, unless there be some special reason to the contrary. Plowd. 541 ; 1 Inst. 112 *b ;* Shep. Touch. 88 ; Broom's Legal Maxims, *580. But, as Judge Metcalf remarks in 23 Amer. Jurist, 277, this rule has very little operation in modern times, a reason to the contrary being almost always found. Nowadays the rules of construction applied in cases of repugnancy give effect to every part of a deed,

when consistent with the rules of law and the intention of the party. When this is impossible, the part which is repugnant to the intention is rejected. And whenever the language used is susceptible of more than one interpretation, the courts will look at the circumstances existing at the time of the transaction, such as the situation of the parties, the subject matter of the conveyance, the acts of the parties contemporaneous with and subsequent to the deed. To this extent extraneous evidence is admissible to aid in the construction of written contracts. *Wilson* v. *Troup*, 2 Cow. 195; *Parkhurst* v. *Smith*, Willes, 327, 332; *Bradley* v. *The Washington, Alexandria & Georgetown Steam Packet Co.* 13 Pet. 89, 100–103; *Winnipisseogee Lake Cotton and Woollen Co.* v. *Perley*, 46 N. H. 83, 101; *Bell* v. *Woodward*, 46 N. H. 315–331; *Gibson* v. *Tyson*, 5 Watts, 34, 41. If, after all, the interpretation to be given to the deed remains doubtful, the court will adopt the construction which is most favorable to the grantee, because it is the fault of the grantor that he has left the matter in doubt, and he ought not to be permitted to take advantage of a difficulty which he has himself created.

Applying these rules of construction to the deed under consideration, and viewing the transaction in the light of the facts surrounding it, as disclosed by the evidence, we are inclined to the opinion that it was the intention of the makers to include in the land conveyed the tract in controversy, and that the clause in the description, bounding the land "northerly and westerly on the Middle Road, so called, from Providence to East Greenwich and on the Providence and Pawcatuck Turnpike Road," instead of on Mashapaug Pond, by which the tract in controversy was apparently excluded from the land conveyed, was inserted by inadvertence or mistake, and should be rejected as repugnant to those parts which state the quantity as about forty six acres and designate the land as the home estate of their father. The reasons which have inclined us to this opinion are the following: The deed under consideration was made in pursuance of, and to carry into effect, an agreement for partition of the real estate which the parties owned. This real estate consisted of two farms, of which one had belonged to their uncle, the other to their father. The tract in controversy was a strip of land skirting Mashapaug Pond, and formed a part of

the latter farm. No reason has been suggested to us why it should have been desirable for.the parties to retain as tenants in common this tract, which was at the time apparently of trifling value. In the absence of such a reason, it is not unreasonable to presume that the parties in making a partition should have included in it all their real estate. Again, the quantity of land conveyed is recited to be " about forty six acres." Exclude the tract in controversy and the quantity is reduced to forty four acres. It is, doubtless, true that the statement of the quantity of the land conveyed cannot always be strongly relied upon as the most certain indication of intention, since it is a matter concerning which the parties may easily be mistaken. Where, however, the number of acres stated accords with the area of the land claimed to have been conveyed, and with the result of a computation made by adding together quantities acquired by several deeds in different parcels, and deducting therefrom quantities conveyed in different parcels by other deeds, the presumption of the correctness of the statement is strengthened, and the weight to be given to it, as indicative of intention, is proportionately increased. But, perhaps, the most significant consideration is the conduct of the parties, following the conveyance, indicating the construction which they themselves put upon the deed. The evidence shows that Nathan entered into the sole and exclusive occupation of the entire farm which had been the home estate of their father, including the tract in controversy, and continued in such occupation, exercising acts of ownership upon it, until his death, a period of more than twenty five years. Neither William F. nor Sophia, so far as appears, ever asserted any claim to, or right in, the home estate of their father, or the tract in controversy, but, on the contrary, both acquiesced, as long as they lived, in its exclusive occupation by Nathan.

If, however, notwithstanding the foregoing considerations, the proper interpretation of the deed in question is to be regarded as still doubtful, then, under the rule already stated, the deed is to be taken most strongly against the makers.

It follows from the foregoing considerations, that the title to the tract of land in controversy vested, under the deed we have been considering, in Nathan Waterman, and that none of the

plaintiffs are entitled to recover so much of that tract as was conveyed by him to the defendants by deed dated May 1, 1861, referred to above.

After the above opinion had been given, the case came again before the court upon a motion for the entry of judgment, both plaintiffs and defendant claiming judgment under the opinion and upon the pleadings.

The following opinion was delivered upon this motion :

*March* 26, 1885.   MATTESON, J.   When the former opinion in this case had been announced, the plaintiffs asked for judgment for the northerly portion of the tract in controversy, being so much of it as had not been conveyed by Nathan Waterman, in his lifetime, to the defendant, by deed dated May 1, 1861.   They contended that the deeds, offered by the defendant, from some of themselves, as heirs at law of Nathan Waterman, to his widow Nancy Waterman, and to Cottrell T. Wilcox, as recited in the former opinion, were insufficient to pass the title to said northerly portion.   The descriptions in these deeds were all alike, and were, as we remarked in the former opinion, substantially the same as that then under consideration.   The language of these descriptions is as follows, namely : " A certain farm or tract of land, with all the buildings and improvements thereon, situate in said town of Cranston, containing by estimation about forty six acres, more or less, and bounded as follows : northerly and westerly on the Providence and Pawcatuck Turnpike and the Middle Road to East Greenwich, so called; easterly partly on land formerly owned by Thomas Grace, partly on land of Robert Grinnell, and partly on land of Philip S. Paine ; southerly on land of said Grinnell and Paine. For a more particular description, see a quitclaim deed from William F. Waterman and others to said Nathan Waterman, recorded in the town clerk's office in said Cranston, in Book No. 14, page 370, of the land records."

The plaintiffs contend, as they did in relation to the deed which we formerly considered, that, as the description expressly bounds the land conveyed northerly and westerly on the Providence and Pawcatuck Turnpike and the Middle Road to East Greenwich so called, it thereby excludes said northerly portion ; and that the

added clause, referring for a more particular description to the earlier deed named, cannot enlarge the grant beyond the particular description, that being particular, definite, and unambiguous. It will be observed that the reference is, "*for a more particular description*," and not merely the common reference to facilitate the searching of the title, as the plaintiffs have supposed. Such a reference incorporates into a deed whatever is contained in the deed to which reference is made. *Knowles* v. *Nichols*, 2 Curtis, 571, 573, 574; *Varick* v. *Smith*, 9 Paige, 547, 567; *Phelps and Stewart's Lessee* v. *Phelps*, 17 Md. 120, 134; *McIver's Lessee* v. *Walker*, 9 Cranch, 173, 178, 179; also in 4 Wheat. 444, 448, 449; *Allen* v. *Bates*, 6 Pick. 460, 461. It will be further observed that the conveyance is of " a certain *farm* or tract of land, containing," &c., language broad enough to include the entire farm, as it had been theretofore known and occupied. The purpose of the description following these general words is not, therefore, to enlarge the grant, but merely to identify the farm which is the subject of the grant. Parts of this description being irreconcilably repugnant, the question is, as it was with reference to the deed formerly considered, which part is to be rejected and which is to stand as conformable to the intention of the parties. The circumstances, so far as they appear, lead us to think that the intention was to convey the farm, as it had previously been known and occupied, and that the clause bounding it northerly and westerly on the Turnpike and Middle Road, which is repugnant to such intention, was probably copied by the scrivener from the earlier deed, and was inserted therein, as we found in the former opinion, by inadvertence or mistake.

The insertion of the words " by estimation " before the words " forty six acres," and of " more or less " after them, which were not contained in the earlier deed, instead of indicating a contrary intention, as the plaintiffs insist, are to our minds more naturally explained upon the idea that the makers of these deeds were aware that Nathan Waterman had conveyed the southerly portion of the tract in controversy to the defendant, and therefore deemed it necessary to limit the statement of the number of acres, by the words inserted, so that it should not be taken as an exact statement of the quantity of land.

As plaintiffs in ejectment can recover only upon proof of their title to the demanded premises, it follows that none of the plaintiffs, whose interests passed under the deeds in question, can recover any part of said northerly portion. The only remaining plaintiffs are John S. Aborn and his wife Lydia Aborn, and Thomas L. Stadden and his wife Elizabeth Stadden, the respective interests of said Lydia and Elizabeth, in said northerly portion, being each an undivided eighth. Are they entitled to recover in the present action?

In ejectment, when two or more persons sue as cotenants, and it appears upon the trial that one of them has no interest in the property, judgment must be rendered for the defendant. To entitle the plaintiffs to recover, *all* the plaintiffs must have a right to demand the possession. *De Mill* v. *Lockwood*, 3 Blatchf. 56, 61 ; *Toomey* v. *Pierce*, 42 Cal. 335, 338; *Cheney* v. *Cheney*, 26 Vt. 606, 608; *Jackson* v. *Richmond*, 4 Johns. Rep. 483. Nor is this rule altered by Pub. Stat. R. I. cap. 230, § 1, which simply permits actions of ejectment, or other actions concerning any estate holden or claimed in coparcenary, common or joint tenancy, where the possession of the estate claimed is the object of the suit, to be commenced by all or any two or more of the coparceners, tenants in common, or joint tenants, or to be brought by each one for his particular share of the estate, but does not authorize a judgment in favor of one or more coparceners, tenants in common, or joint tenants, having an interest in the estate claimed, when improperly joined as plaintiffs with another person or persons having no such interest.

Pub. Stat. R. I. cap. 204, § 34, however, provide that " no action shall be defeated by the misjoinder of parties, if the matter in controversy can be properly dealt with and settled between the parties before the court, and the court may order any party improperly joined in any action to be stricken out." . . . Under this provision of the statute we not only have authority to order the persons improperly made plaintiffs to be stricken out, but are required *to* sustain the action, instead of permitting it to be defeated by the misjoinder, if we can properly deal with the matter in controversy and settle it between the parties.

The defendant contends that the statute does not apply to a

case like the present, because there is not only a misjoinder of parties, but because the title by which the Aborns and Staddens now claim the northerly portion of the tract in controversy, as heirs of Nathan Waterman, is inconsistent with the title which they asserted to the whole of said tract, adversely to the deed from William F. Waterman, Senior, and Sophia Waterman to said Nathan. We fail to perceive, however, if the Aborns and Staddens have, in fact, title to the portion of the tract now claimed, how the circumstance that they have previously in the suit asserted a different and inconsistent title to a larger tract, including that now claimed, which has been found to be invalid, can prevent us from properly dealing with the rights of the parties in the portion of the tract now claimed and settling the controversy between them.

The defendant also contends that judgment ought not to be given in favor of the Aborns and Staddens, because there has been no proof of ouster. The denial of a right of a cotenant made to him directly, or brought to his knowledge, is, when accompanied by the exclusive possession, sufficient to warrant a finding of an ouster. Freeman on Cotenancy and Partition, § 235 ; *Siglar* v. *Van Riper*, 10 Wend. 414, 418, 419 ; *Humbert* v. *Trinity Church*, 24 Wend. 587, 597, 598. The defendant has filed a plea, in which he alleges that he and those under whom he derives his title had been, for twenty years before the bringing of the suit, in the uninterrupted, quiet, peaceable, and actual seizin and possession of the land demanded, claiming the same as his and their *sole* and rightful estate in fee simple. This assertion by plea of a title in himself, grounded upon adverse and exclusive possession, amounts to a denial of the title of the plaintiffs, and dispenses with the necessity of further proof of ouster.

We will, upon motion, permit the writ and declaration to be amended by striking out the names of the persons who have been improperly joined as plaintiffs, on condition that the remaining plaintiffs recover no costs ; and will then enter judgment, without costs, in favor of the said Aborns and the said Staddens, for their respective interests in said northerly portion of said tract.

*James Tillinghast*, for plaintiffs.

*Francis W. Miner & John F. Lonsdale*, for defendant.