No. 36,266

Emma B. Zaskey, Arthur F. Zaskey, and Irinne M. Zaskey, *Appellees*, v. Fay A. Farrow, *Appellant* (Brundred Oil Corporation and Standard Oil Company of Indiana, *Appellees*).

(154 P. 2d 1013)

Opinion filed January 6, 1945.

*Charles E. Jones,* of Wichita, argued the cause, and *Mark H. Adams* and *O. A. Witterman,* both of Wichita, were on the briefs for the appellant.

*Merle Loughridge,* of Garnett, argued the cause, and *Wayne Loughridge,* of Garnett, was on the briefs for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This appeal presents for review the trial court's interpretation of a certain reservation and proviso in a warranty deed to a seventy-one acre tract of land in Anderson county. The grantor was the late Louis E. Zaskey. The grantee was the defendant Fay A. Farrow. The land had been leased for oil and gas in 1922 by Zaskey; and oil had been profitably produced and marketed from that lease for several years prior to the execution of the warranty deed of present concern. This deed was dated and executed on May 27, 1937. It contained the usual covenants, but in the legal description of the property conveyed was a *reddendum* which read thus: "save and except the mineral rights herein reserved as follows, to wit:

"Said first parties [grantors] hereby reserve for themselves, their heirs, executors, and assigns, all oil, gas and mineral rights in and to the north half (N ½) of said described premises, for a period of five (5) years from the date hereof; providing that first parties will have the further right to lease said reserved portion during said five year period for an additional period, not to exceed fifteen (15) years from the date hereof, and shall be entitled to receive all royalties during said reserved period, providing further that the production of oil and gas or either shall be continuous on said reserved premises after said five year period; it being understood that any time after the expiration of said five year period if oil and gas or both ceases to be produced from said reserved premises, in commercial quantities, then and in that event, this reservation shall cease and shall become null and void, and first party, his heirs and assigns shall have no further interest in and to said reserved premises or any part thereof."

The *habendum* clause read: "Save and except the reservation of mineral rights hereinbefore set forth."

On November 21, 1938, Zaskey and certain other holders of lands, oil leases, or royalty rights in lands in the vicinity of the seventy-one acres in question executed a community agreement for the purpose of unitizing their respective interests, and pursuant thereto on February 17, 1939, Zaskey executed an oil and gas lease to the Brundred Oil Corporation which had theretofore acquired the Zaskey lease of 1922 and was then operating it. In this second lease (characterized by plaintiff's counsel as supplemental to the lease of 1922) were certain recitals which read:

"Whereas, lessor did on the 27th day of May, 1937, sell, transfer, deed and convey unto Fay A. Farrow all of the lessor's right, title and interest in and to the following described real estate [described] reserving [unto] the lessor herein, their heirs, executors and assigns, in said deed of conveyance, all oil, gas and mineral rights, . . . for a period of five years, and

"Whereas, In said deed of conveyance, lessor further reserved unto themselves the further and additional right and power to lease said oil, gas and mineral rights in and to said reserved portion of said premises for an additional term, not to exceed fifteen years from the date of the execution and delivery of said deed of conveyance, and

"Whereas, Lessor does now desire to exercise said right and power and does now desire to lease the oil, gas and mineral rights in and to said reserved portion of said premises, to the lessee herein, for the greatest length of time permitted by said deed of conveyance,

". . . for a period of time commencing the 17th day of February, 1939, and terminating the 27th day of May, 1952, or so long thereafter as lessor's interest and estate in said land continues."

On April 8, 1939, Zaskey and the Brundred Oil Corporation made a written agreement, reciting and acknowledging Zaskey's continued

interest in the seventy-one acres under the terms of the reservation and proviso incorporated in the warranty deed of 1937 conveying the property from Zaskey to Farrow.

On September 6, 1939, Louis E. Zaskey died testate, a resident of Anderson county. His estate was duly administered and closed, and his heirs and devisees were decreed to be his widow, Emma B. Zaskey and two other persons of the same family name, and their interests in Zaskey's reserved rights in the seventy-one acres were apportioned to them in conformity with the terms of Zaskey's will.

The Brundred Oil Corporation continued to operate the lease. It sold its production from this and other leases included in the community agreement of unitization to the Standard Oil Company of Indiana, which periodically paid to the several royalty owners, including the Zaskey heirs, their respective divisional percentages.

Now we come to the immediate inception of this lawsuit:

On July 30, 1943, Fay A. Farrow addressed a letter to the Brundred Oil Company, the Standard Oil Company and other persons, referring at length to her ownership of the fee by virtue of her deed of 1937, the existence of the lease of 1922, the various transfers and recordings of interests in that lease, and continuing thus:

"It is my contention and claim that all rights, if any, of Louis E. Zaskey and Emma Zaskey, his wife, their heirs, executors and assigns, to the oil, gas and minerals in and to the—[71 acres]—expired five years from the date of said warranty deed, to-wit: On May 27, 1942, and that the proceeds accruing from the sale of the landowner's one-eighth royalty oil or gas produced, saved and sold from said property since said date should be paid to me. This will constitute my demand upon you for an accounting and payment in this respect."

Farrow's letter to these parties concluded with an argumentative discussion of her alleged rights under the terms of her deed of 1937, and threatened the addressees with litigation unless her demand were promptly satisfied. This letter had the effect of suspending the periodical royalty payments which the Zaskey heirs had been receiving under a division order which had taken effect on June 2, 1941.

This claim of interest in the royalty proceeds on the part of Farrow and the consequent suspension of payments to the Zaskey heirs precipitated this lawsuit. In their petition the Zaskey heirs alleged the material facts, the claim of Farrow to their share of the proceeds of the division order, the cessation of all payments to plaintiffs of royalties on the oil produced on the seventy-one acres, and the impounding of the sums allegedly due them therefor. They alleged that Farrow's claim was without justification, and prayed that they

be adjudged to be owners of the royalties accruing on the property so long as production of oil should be continuous and until May 27, 1952, and for all other proper relief.

Issues of law were joined by appropriate pleadings. These included extensive exhibits, and at the trial additional exhibits were introduced. Little oral testimony was offered, and there was no dispute of material fact. The vice-president of the Brundred Oil Corporation, producing operator under the lease of 1922, testified that in obtaining the second lease from Zaskey his company in 1939 did not release of record the lease of 1922. He testified that he saw no reason to do so; that it was the practice of his company to obtain a supplemental or second lease when the original lease would in any way interfere with the operations—"whenever there is anything in the original lease which prevents our going ahead with the proper flooding operations we make a supplemental agreement with the royalty owner."

It was agreed by counsel that until defendant made claim to the royalties in question they had been paid pursuant to the community agreement of 1938 between Zaskey and other landowners, oil lease holders and royalty right holders that unitized their several interests for the continued successful production of oil or gas in the vicinity.

The trial court made findings of fact and conclusions of law favorable to plaintiffs, and rendered judgment accordingly. It directed the impounded royalties to be paid to the plaintiffs, and—

"That the plaintiffs are entitled to receive, provided the production of oil and gas or either is continuous and in commercial quantities, all royalties from oil and gas or either produced from these premises until May 27, 1952."

Defendant assigns various errors, but the gist of this appeal relates to the proper significance to be given to the reddendum provisions of the deed of May 27, 1937, from Zaskey to Farrow.

It is contended by appellant that the reddendum in that deed only reserved a mineral interest in the land for five years from the date of its execution, and that all its other provisions were repugnant to the grant of the fee title and were also repugnant to the existing oil and gas lease. This contention is based on the rule of law that when the fee title to real estate is conveyed, a reservation of a right in the grantor for a subsequent control of the property is repugnant to the grant and is therefore a nullity. That rule of law is well settled by

repeated decisions of this court. (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567; *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126.)

But it must not be overlooked that more than one estate may be separately carved out of a single tract of real property—a surface estate and one or more subsurface estates, and that these may be held in entirely separate ownership, so that a grant of the surface estate is not necessarily impaired by a reserved control or other dominion of the subsurface estate. Over vast areas of this state where minerals may be produced, nothing is more common than the erection of two such separate estates out of the same property. (*Brooks v. Mull,* 147 Kan. 740, 745, 78 P. 2d 879, and citations.) In *Mining Co. v. Atkinson,* 85 Kan. 357, 116 Pac. 499, this court quoted approvingly from standard authorities thus:

"'After the mineral is conveyed apart from the land, or *vice versa,* two separate estates exist, each of which is distinct; the surface and the mineral right are then held by separate and distinct titles in severalty, and each is a freehold estate of inheritance separate from and independent of the other.' (27 Cyc. 687.)" (p. 360.)

It seems clear that appellant's suggestion of a repugnancy between the grant of the fee of the surface estate and the reservation of the grantor's interest in the subsurface estate does not exist.

But it is also urged that the reserved interest of the grantor in the subsurface estate terminated in five years from the date of Zaskey's deed to Farrow, and that a repugnancy exists between the language which reserves to the grantor the mineral rights for five years, and the language which makes a further reservation of the right to lease the land for the remainder of a fifteen-year-term from the date of the deed. This contention, we think, disregards the plain language of the reddendum. It not only reserved in the grantor all mineral rights for five years, but likewise reserved the right to lease such reserved portion of the property for an additional period not exceeding fifteen years from the date of the deed from Zaskey to Farrow. That right to lease must be exercised within the first five years, but if the production of oil or gas is continuous (under the lease of 1922 or any lease made by the grantor during the first five years) the grantor and his heirs and assigns "shall be entitled to receive all royalties during said reserved period . . . . after said five-year period. . . ."

It is therefore clear that appellant's contention that the grantor's reserved rights terminated in five years from the date of the deed is altogether untenable.

Approaching this point from another angle: How does any interest in the mineral estate eventually devolve on the appellant? No language in the instrument expressly conveys that interest. True enough, the subsurface estate reserved by Zaskey will terminate in any event in fifteen years from the date of appellant's deed of 1937, which will be on May 27, 1952. It may terminate much sooner; it will terminate completely if and when production of oil or gas ceases before that date. Note closely the language of the reddendum:

"It [is] understood that any time after the expiration of said five year period if oil and gas or both ceases to be produced from said reserved premises, in commercial quantities, then and in that event, this reservation shall cease and shall become null and void, and first party, his heirs and assigns shall have no further interest in and to said reserved premises or any part thereof."

It is by virtue of the language just quoted that the subsurface estate will terminate and merge into that of the grantee of the deed of 1937. It does not terminate within five years but at any time after five years if or when production ceases. Multiplicity of words cannot make the language and intent of the reservation clearer or more specific.

It is also contended that Zaskey had no right to execute the supplemental lease to the Brundred Oil Corporation in 1939 because his right to lease the property for oil and gas was exhausted when he leased it in 1922, under which lease oil was being produced by the Brundred company when Zaskey sold the land to Farrow in 1937. We cannot assent to that. Zaskey's right to lease the property was absolute for five years, and his right to further lease it after the first five years for a term ending fifteen years from the date of the deed could only be terminated by cessation of production, not otherwise. And whether the leasing agreements between Zaskey and the Brundred company in February and April of 1939 be considered as merely amendatory and supplemental to the lease of 1922, or entirely as distinct and separate contracts, the appellant has no concern therewith. If necessary to a determination of this appeal, it would be difficult for this court to hold that the progress of the science of oil and gas production since 1922 by water pressurizing and unitizing leasehold interests in reasonably circumscribed areas of producing territory was not within the contemplation and intendment of the original lease contracts, and that such supplementary agreements with owners of mineral interests were prejudicial to the

rights of parties on whom such determinable mineral estates would eventually devolve. However, the plain text of the reddendum before us does not require a determination of that question.

We have not failed to notice carefully the other arguments advanced on appellant's behalf but they do not raise the slightest doubt of the correctness or justice of the trial court's judgment, nor is anything further suggested which requires discussion.

The judgment is affirmed.