205 A.2d 831.

ARTHUR R. MELLOR *et ux. vs.* THE CONKLIN LIMESTONE COMPANY, INC., *et al.*

JOHN P. DESPRES *et ux. vs.* THE CONKLIN LIMESTONE COMPANY, INC., *et al.*

DECEMBER 29, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Roberts, J. These suits in equity were brought to re-

move cloud on title by each of the complainants under the provisions of G. L. 1956, §34-16-1. They were heard together by a justice of the superior court, who thereafter in each case entered a decree denying and dismissing the bill of complaint, from which each complainant has prosecuted an appeal to this court.

The record discloses that complainants Arthur R. and Marion B. Mellor are the owners of two tracts of land in the town of Lincoln containing three acres acquired by them by deed from the conservator of the estate of Mabel R. Easton dated November 9, 1960. The record further discloses that the complainants John P. and Olga Z. Despres are the owners of a tract of land in said town of Lincoln containing about four acres, which was acquired by them by a deed dated November 3, 1960. The instant suits were instituted as a result of respondent The Conklin Limestone Company, Inc., hereinafter referred to as Conklin, giving notice to complainants by letters dated April 20, 1961 of its claim of right to take limestone from their respective properties. It does not appear to be disputed that Conklin has acquired rights to limestone that had been reserved by Jeremiah Smith, Simon Aldrich, and Thomas and Samuel Mann, and it is on the basis of the rights so acquired that the notices referred to were given by Conklin to complainants.

It is conceded that the properties now owned by complainants were part of a tract of land containing about 150 acres that on December 17, 1740 David Harris conveyed in fee to one Jonathan Harris. It is further conceded that on January 12, 1741 said Jonathan Harris granted David Harris a leasehold estate in the limestone in the 150-acre tract with a right to dig and remove such stone, the pertinent portion of the deed reading as follows:

"* * * covering all the lime stone I have in & upon that tract of land I bought of him the sd. David Harris scituate in said: together with the lime kill now

built on said farme together with Liberty to dig and cart sd. lime stone on sd. farme to sd. kill in order to burne sd. stone in sd. kill unto lime and also liberty to lay down wood and stone about sd. kill and all other meterals necessary for the caring on sd. lime business during sd. terme and also liberty to cart lime through sd. farme towards the market and any other thing or things necessary for sd. business doing as little damage as the nature of the business will admitt of * * *."

In our opinion, the quoted language of the conveyance above is significant of an intent to lease an estate in the stone separate from the surface estate and to grant an easement of way to the lessee for the purpose of extracting and removing the stone.

The properties of complainants were included also in a portion of the 150-acre tract, containing about 72 acres, which passed under the will of Jonathan Harris in undivided thirds to his three grandsons. Each grandson thereafter conveyed his undivided third to grantees who were to become subsequently the reservors of an estate in the limestone in said land upon which the instant claim of respondent Conklin is based. One grandson conveyed an undivided third in 1791 to Jeremiah Smith, another in 1792 to Samuel and Thomas Mann, and the third to Simon Aldrich in 1800.

Thereafter these owners conveyed the fee in the undivided thirds in the land to others, retaining in each instance by a provision in the deed ownership in the limestone contained within the land in fee. It is agreed that two of these conveyances relate directly to the 44-acre tract within which the land owned by the instant complainants lies. The first pertinent conveyance was made in 1807 by Thomas and Samuel Mann to Winsor Aldrich, an estate in the limestone being severed from the estate in the land by the following provision of the deed: "* * * alway excepting & reserving to ourselves our heirs and

assigns forever all the Lime Rocks on said premises or belonging thereto and liberty to pass to & from said Lime rocks with teams and other ways and to dig said Rocks, Also all our right and title in & unto the Lime Kiln Limes & Lime Houses on said premises and liberty to repair or build a new said Lime Kilns and Lime Houses on said premises and liberty to lay Lime Rocks & wood around said Kilns and other materials for the purpose of burning lime or repairing or building a new said Lime Kilns and Lime Houses where it may be most convenient with doing least damage and liberty to pass to and from said Lime rocks to said Lime Kilns with teams & other ways where it may be most convenient with doing least damage."

Thereafter, in 1809, Jeremiah Smith conveyed a third interest in 44 acres which were part of the 72-acre tract to Simon and Winsor Aldrich, retaining ownership of the limestone in that tract in the following language: "Always excepting and reserving to myself my heirs & assigns forever all the Right, Title and Interest I have or ought to have in and to the lime rocks, lime kiln and lime house on said premises, with liberty to pass to and from them with team & otherwise where it may be most convenient with doing least damage for the purpose of digging said lime rocks and carrying them away and liberty around said Lime Kiln & Lime House to lay wood and stone to burn lime and to rebuild and repair said Lime Kiln & Lime House."

We understand complainants to concede that the grantors reserved an estate in the limestone contained within the 44-acre tract but that these reservations applied not to the entire 44 acres but to a portion thereof known to the parties but not disclosed in the terms of the conveyances. This raises the issue whether the conceded reservation in the limestone includes limestone, if any, that underlies the properties of complainants, they conceding that their properties are within the pertinent tract but denying

an intention to include them within the scope of the reservations. In short, they are claiming that the reservations are obscure as to the precise portions of the tract to which they apply and, therefore, must be considered as ambiguous.

They argue that these circumstances warrant resort to extrinsic evidence for the purpose of ascertaining the portions of the tract to which the reservations apply and that on the basis of subsequent relevant conveyances and transactions it appears that the reservations applied to only a portion of the tract. This portion, they argue, was in subsequent conveyances bounded and designated as the Jointa Ledge.

The court considered thoroughly the arguments of the parties and ordered and heard further argument on what we conceive to be a basic question raised in the litigation. After a thorough consideration thereof, we are persuaded that the trial justice did not err in denying and dismissing the bills of complaint. We so hold because we cannot agree with complainants' basic assertion that the reservations are ambiguous and require a resort to extraneous evidence for their proper construction.

The complainants urge, first, that the reservations, if read literally, would authorize the reservors to quarry limestone throughout the entire tract and thus destroy the surface estate conveyed in the deeds. This, they argue, renders the conveyances absurd unless the reservations apply not to the entire tract, but only to some undisclosed portion thereof. Second, they argue that the reservations are inextricably interwoven with concomitant easements providing for the reservors' entry upon the tract to dig and take away the limestone. They argue that if the reservations are intended to apply to the entire tract, these easements would have been unnecessary and conclude from the inclusion of such easements that only a portion of the tract was within the reservations.

The first contention, as we understand it; posits repugnancy in the deeds by reason of the inconsistency of the conveyance of a fee in the land with a reservation of an estate in the limestone lying under the entire tract. This inconsistency springs, they argue, from the repugnancy between the estate purported to be conveyed and the estate reserved by the grantors. They argue that unless the reservation is held to be ambiguous and is construed as applying only to a portion of the tract, namely, the Jointa Ledge, it purports to reserve a freehold estate in the limestone that is repugnant to a fee in the surface.

The law concerning the construction of inconsistent terms in conveyances of land and the effect of repugnancy, when established, is well settled. In *Waterman* v. *Andrews*, 14 R. I. 589, this court said at page 594: "Nowadays the rules of construction applied in cases of repugnancy give effect to every part of a deed, when consistent with the rules of law and the intention of the party. When this is impossible, the part which is repugnant to the intention is rejected." In short, this court has recognized that when a question of repugnancy is raised, the basic rules of construction may be invoked. It is clear, however, that such a rule posits the existence of a repugnancy which arises out of an irreconcilable inconsistency within the terms of the instrument.

The rationale of the rule on repugnancy has been aptly stated in *Adams* v. *Warner*, 23 Vt. 395, where that court said at page 414: "If an exception be of the whole thing granted, so that, by giving effect to the exception, the grant would become wholly inoperative, then it becomes certain the exception could not have been intended in that sense; and as it is impossible to know what it did mean, to save annulling the grant altogether the exception is held void." The question before us then is whether the reservations under consideration are such as to make the grants in fee

of the surface a nullity requiring this court, as stated in *Waterman* v. *Andrews, supra,* to treat the reservations as ambiguous and to apply the rules of documentary construction thereto in an attempt to construe the reservations as being consistent with a grant of a fee in the surface. We do not, however, perceive any repugnancy in the instant case between the grant in fee and the reservations of the estate in fee in the limestone.

There are well-recognized situations in which repugnancy will not result from the creation of separate estates in land, one of these being where subsurface estates are severed from surface estates. In *Zaskey* v. *Farrow,* 159 Kan. 347, 350, the court conceded that "when the fee title to real estate is conveyed, a reservation of a right in the grantor for a subsequent control of the property is repugnant to the grant and is therefore a nullity." The court then went on, however, to state clearly its view as to the effect of the creation of subsurface estates. "But it must not be overlooked that more than one estate may be separately carved out of a single tract of real property—a surface estate and one or more subsurface estates, and that these may be held in entirely separate ownership, so that a grant of the surface estate is not necessarily impaired by a reserved control or other dominion of the subsurface estate."

The general rule is that a grantor may by way of reservation or exception separate minerals and surface into independent legal estates of equal dignity and that an estate in minerals so reserved or excepted may be dealt with as any other fee interest in land. *Vance* v. *Pritchard,* 213 N. C. 552; *Freeport Coal Co.* v. *Valley Point Mining Co.,* 141 W. Va. 397. "It is, of course, elementary that a conveyance of land without reservation or exception embraces the underlying minerals * * *. And it is equally well settled that there may be a severance of the mineral estate from

the surface estate * * *. A common method of severance is by an exception in the deed of conveyance." *Bostic* v. *Bostic,* 199 Va. 348, 351.

The concept of "surface" as it relates to an estate severed from a subsurface estate is made clear in *Wilkes-Barre Township School District* v. *Corgan,* 403 Pa. 383. The court therein said at page 387: "The term 'surface,' when used in law, is seldom, if ever, limited to mere geometrical superficies. Where, however, the surface is granted to one and the underlying coal to another, the 'surface' includes whatever earth, soil or land which lie above and is superincumbent upon the coal * * *. Therefore, the grantor conveyed complete title and right of possession in and to the soil and earth resting upon the coal. But, title to the coal with the right to remove it remained in and was reserved to the grantor."

Such surface estates are entitled as of right to subjacent support. In *New Charter Coal Co.* v. *McKee,* 411 Pa. 307, the court said at page 312 that " 'It is well established in Pennsylvania that the owner of the surface land has a proprietary right to support of the surface * * *.' " In *Smith* v. *Glen Alden Coal Co.,* 347 Pa. 290, the court said at page 304: " 'The owner of the surface is entitled to absolute support of his land, not as an easement or right depending on a supposed grant, but as a proprietary right at common law.' " The court went on to say: " 'In the absence of express waiver . . . [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support.' * * * 'Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate.' * * * This servitude of support is an estate in land, sometimes referred to in this commonwealth as 'the third estate'." In *Jensen* v. *Sheker,* 231 Iowa 240, the court said at page 245: " 'The great weight of authority, both English

and American, undoubtedly supports the rule that, where the ownership of the surface of the land has been severed from the ownership of the minerals under it, *unless the matter has been otherwise determined by contract or conveyance,* the owner of the surface has an absolute right to necessary support for his land.' (Italics supplied.)"

We are of the opinion then that the grantors, in severing estates in the limestone within the entire 44-acre tract from estates in the surface thereof, did not thereby create a repugnancy. It is clear from the foregoing authorities that the creation of such a subsurface estate is not inconsistent with the conveyance of a surface estate, and therefore it is our conclusion that the language of the instant grants establishing estates in limestone within the entire tract is not of necessity to be regarded as ambiguous.

We turn to complainants' argument that the grantors' reservation of easements to enter upon the surface and quarry, process, and carry away the stone makes manifest the ambiguity of the language of the grants, their theory being that if the grantors had intended to grant a subsurface estate in the limestone within the entire tract, the reservation of such easements would have been superfluous. This argument disregards the nature of the surface estate created by the grants, which is completely separate from the estate in the limestone and is entitled as of right to subjacent support unless that right is altered or waived by agreement.

The easements created clearly are appurtenant to the subsurface estate excepted by the grantors from the conveyances and obviously were intended to prescribe the methods by which the grantors could invade the surface estate for the purpose of extracting and processing the limestone. The very creation of the easements reflects the intention of the parties to protect the surface estate against substantial destruction that would follow uncontrolled quarrying

or, in modern parlance, strip mining the limestone. We have already stated our opinion that the creation of a separate surface estate in fee clearly resulted from the grants under consideration, and it is well settled that once having granted a freehold estate in a deed, the grantor cannot nullify it by a subsequent condition in that deed. *Gaddes* v. *Pawtucket Institution for Savings,* 33 R. I. 177, 187. In short, we view the easements here under consideration as limiting the extent to which the grantors may impair the subjacent support to which that estate is entitled as of right.

It is our opinion that the easements here could raise issues analogous to those in *Wilkes-Barre Township School District* v. *Corgan, supra.* In that case a deed excepted from the grant the coal under the land with the right and privilege of removing the same while conveying the surface estate to the complainant township. It appears thereafter that the owner of the subsurface estate entered upon the land and engaged in a strip-mining operation for the purpose of removing the coal. The court said at page 388: "Therefore, the grantor conveyed complete title and right of possession in and to the soil and earth resting upon the coal. But, title to the coal with the right to remove it remained in and was reserved to the grantor. These facts are clearly established by the language of the deed. As to the method to be employed in the removal of the coal, that is something again. What did the parties contract in regard to this? How did they intend that this would be accomplished? Did they contemplate that, by virtue of the stated mining rights, the grantor was entitled to occupy the surface, mine the coal by intentionally removing and destroying the soil overlying it? This is the pivotal question and the answer is not specifically spelled out in the deed. * * * What the parties manifestly intended was that the coal was to be removed by the method then known, and accepted as usual and commonplace. This was vertical

tunnel, or shaft mining. Needless to say, the nature and consequences of strip mining are vastly different * * *." See also *Heidt* v. *Aughenbaugh Coal Co.*, 406 Pa. 188.

It is our opinion then that the easements have relevance only as to the extent to which Conklin, as owner of the subsurface estate, may invade the surface estate to remove and process the limestone lying thereunder. If viewed in the light of the fact that a quarrying operation appears to have been in progress in the vicinity of the land in 1807 and 1809, when these easements were created, they might well be ambiguous as to the intent of the parties at that time. However, under the prayers of the instant bills we perceive no necessity for passing upon the scope of the easements. There is before us no question as to an imminent invasion of the surface estates by Conklin for the purpose of conducting a quarrying operation of any kind. To consider the easements in that circumstance could only result in importing any ambiguity that might inhere in the easements into the grants. This we will not do and, therefore, we conclude that the freehold estates in the limestone excepted from the grants conveying the surface estates do not constitute clouds on the title of the complainants in either case.

The complainants' appeals are denied and dismissed, the decrees appealed from are affirmed, and each cause is remanded to the superior court for further proceedings.

POWERS, J., dissents.

*Gardner, Sawyer, Cottam & Gates, Charles F. Cottam,* for complainants.

*Lewis Z. Lavine,* for respondents.