DECISION
Before this Court for decision is a request for a mandatory injunction by the Plaintiff, Providence and Worcester Railroad Company ("PW") against the Defendants, J. Broomfield Sons Co., Inc. ("Broomfield") and Coastal Recycling, Inc. ("Coastal"). In its underlying cause of action, PW claims that the Defendants are interfering with its easement by failing to remove certain containers, equipment, and debris from the easement area. Jurisdiction is pursuant to section 8-2-13 of the General Laws of Rhode Island.
 Facts and Travel
PW is a common carrier incorporated in Rhode Island engaged in the transportation of property by railroad in New York and parts of New England. Prior to August 7, 1985, PW was fee owner of certain real property in Providence and Cranston known as the Harbor Junction Industrial Track. PW conveyed this property in fee to the City of Providence ("City") by Deed and Agreement ("Deed") dated August 7, 1985. In the Deed, PW granted to the City:
 All that line of railroad owned by PW being formerly the Penn Central Transportation Company's line of railroad *Page 2 
known as the "Harbor Junction Industrial Track" and identified as Line Code 4168 in the records of the United States Railway Association and also identified in the Recorder's Office of the City of Providence in Book 1237 at Page 72 and being all of the real property owned by the PW lying in, under, above, along[,] contiguous to, adjacent and connecting to such line. (Cartier Aff. Ex. A ¶ 1, Jan. 23, 2009.)
The Deed also reserved to PW an "easement to conduct railroad operations on and over the property and improvements herein conveyed."Id. The Deed further provided that "[s]o long as PW shall conduct such operations in a manner consistent with its obligations under this Deed and Agreement, its right to do so shall be exclusive." Id. The Deed allowed PW "[t]o construct contiguous or adjacent additional rail lines and trackage and install necessary track connections, subject to the prior written approval of the City, which approval shall not be unreasonably withheld." Id. ¶ 3(d). The Deed also required that the City allow PW the opportunity to review and approve any potential lease agreement that the City might enter into which would affect PW's easement. Id. ¶ 11.
On December 1, 2002, the City entered into a lease ("Lease") with Broomfield, a Rhode Island corporation in the business of recycling new and scrap metal.[1] The City leased to Broomfield:
 All of the real property owned by the PW lying in, under, above, along[,] contiguous to, adjacent and connecting to that line of railroad owned by PW being formerly the Penn Central Transportation Company's line of railroad known as the "Harbor Junction Industrial Track" and *Page 3 
identified as Line Code 4168 in the records of the United States Railway Association and also identified in the Recorder's Office of the City of Providence in Book 1237 at Page 72. Id. Ex. C ¶ 1.1.
The Lease provides that "[t]he Demised Premises are demised and letsubject to . . . all . . . easements. . . ." Id. ¶ 1.2 (emphasis added). The original or initial term of the Lease commenced on December 1, 2002 and expired on December 31, 2005. Id. ¶ 2. The Lease provided for an option to renew "for an extended term of three (3) years." Id. ¶ 2.2. It is undisputed that Broomfield exercised this option, thus initiating a second term which ended on December 31, 2008. In the section entitled "Rent," the Lease mentions "first," "second," and "third" three-year terms. See id. ¶ 3.1. Coastal, a Rhode Island corporation involved in recycling construction and demolition debris, is a sub-lessee of Broomfield. Coastal possesses various containers, equipment, and debris located on the relevant premises.
On December 7, 2006, PW brought this suit[2] seeking injunctive relief.[3] As an equitable remedy, PW asked this Court to (i) enjoin the Defendants from interfering with its easement; and (ii) order the Defendants to remove their concrete fill, roll-off refuse containers, equipment, and any other property from PW's easement. On February 2, 2007, another Justice of this Court entered an order in this matter that required the Defendants to "remove, and thereafter [] not store or place, any equipment, scrap, materials, containers or other items within 15 feet of the northern most track of the two southerly tracks (identified as Track #2 in the complaint) within the easement area described in the Complaint." (Pl.'s Mem. Supp. Mtn. Injunctive Relief Ex. 1, Jan. 26, *Page 4 
2009.) This order required the Defendants to remove their property from the southerly portion, but not from the northerly portion.
Sometime in 2008, PW determined that it needed to occupy the entire easement area because of the increased economic activity in the Port of Providence, and notified the City accordingly. On May 28, 2008, counsel for Broomfield sent a letter to the Chair of the City Properties Committee of the City Council which reads in pertinent part:
 [I]n accordance with Paragraph 3.1 . . . of the existing Lease, we hereby exercise our option to extend the existing Lease for the above-entitled property for an additional three-three [sic] (3) year terms [sic], all in accordance with the Providence City Council Resolution Number 454. . . . (Cartier Aff. Ex. E, Jan. 23, 2009.)
On October 8, 2008, the City Council approved Resolution No. 392 which reads in pertinent part:
 WHEREAS, PW now intends to exercise its rights to construct additional trackage upon the Property and will require the totality of the area of the Easement, to the exclusion of Broomfield and Coastal.
 NOW, THEREFORE, BE IT RESOLVED, That His Honor, the Mayor, or his designee, is authorized to approve said additional trackage upon condition that, to recompense the City for lost revenue, PW be charged $1,800.00 per annum for use of the Easement for a period of nine years commencing on the date that Broomfield and Coastal vacate the Easement. Id. Ex. D at 2.
The Defendants refuse to remove the crushed concrete fill, the roll-off containers, equipment and other waste that they are storing on the northerly portion of the easement area. PW now seeks a mandatory injunction from this Court ordering the Defendants to remove the containers, debris, equipment, and other materials from the entirety of PW's easement, and to cease interfering with the easement. *Page 5 
 Discussion A Repugnancy
This Court must determine whether PW properly reserved an easement over the property that it conveyed to the City through the 1985 Deed and Agreement. The Defendants contend that PW's easement should be declared void for repugnancy because the language of the grant and the language of the reservation are irreconcilably inconsistent. This Court disagrees.[4]
In 1964, the Supreme Court of Rhode Island explained the well-settled rule on repugnancy. See Mellor v. Conklin Limestone Co., 99 R.I. 84,90-91, 205 A.2d 831, 834-35 (1964) (citing Waterman v. Andrews,14 R.I. 589 (1884)). Two clauses in a deed are repugnant to one another when they cannot be reconciled to give both clauses meaning. Id. The rationale of the rule on repugnancy has been stated as follows:
 If an exception be of the whole thing granted, so that, by giving effect to the exception, the grant would become wholly inoperative, then it becomes certain the exception could not have been intended in that sense; and as it is impossible to know what it did mean, to save annulling the grant altogether the exception is held void. Id. at 90, 205 A.2d at 834 (citing Adams v. Warner, 23 Vt. 395, 414 (1851)) (emphasis added).
Courts will ordinarily attempt to reconcile the granting clause and the reservation clause so as to give effect to both. 23 Am. Jur. 2dDeeds § 63 (2002). "An attempted reservation will not be declared void for repugnancy to the granting clause where, from an examination of the whole instrument, the intention of the parties thereto is plain and unambiguous." Id. No repugnancy is found when the grantor conveys an identifiable *Page 6 
tract of land and then "reserves some right in relation to the land conveyed." Id. However, repugnancy will be found where the reservation is of all the property granted or is as broad as the grant.See Carson v. Mo. Pac. R.R. Co., 209 S.W.2d 97 (Ark. 1948).
Here, PW's reservation of an easement does not render its grant to the City "wholly inoperative." See Mellor, 99 R.I. at 90,205 A.2d at 834. Property is often described as a "bundle of sticks." See,e.g., U.S. v. Craft, 535 U.S. 274, 278-79 (2002) (describing bundle of sticks as collection of individual rights which, in certain combinations, constitute property). When PW granted certain land to the City and at the same time reserved a use easement, the City was given certain sticks from the bundle, and PW retained certain sticks. For example, the City gained sticks which allowed it to (i) use and occupy the land, subject to PW's easement; and (ii) lease the land, as it did to Broomfield. At the same time, PW retained certain sticks which allowed it to (i) use the surface of the land for railroad purposes; and (ii) construct additional rails subject to the City's approval. Notwithstanding PW's easement, and pursuant to its grant, the City had the right to use the land since 1985. Seventeen years later in 2002, notwithstanding PW's easement, the City leased the land to Broomfield. Furthermore, the City was not unilaterally excluded from the land; rather, the City approved of PW's proposed construction and use of the entire easement area. The fact that the City had the right to approve or disapprove of PW's expansion represents another stick that the City received. Moreover, the City is still permitted to lease certain parts of the land for billboards. Based on the foregoing, it is clear that the grant to the City has not become "wholly inoperative." SeeMellor, 99 R.I. at 90, 205 A.2d at 834. Accordingly, this Court finds that PW's easement is not void under the rule of repugnancy. *Page 7 
 B Scope of Easement
Broomfield claims a right to possess the land in question or assign such right because of the 2002 Lease between it and the City. Coastal claims a right to possess the land through a sub-lease with Broomfield. Although the Defendants acknowledge that they lease the land subject to certain easement rights of PW, they contend that the City has essentially "sold" PW additional or expanded easement rights, effectively ousting Defendants from the land.[5]
The issue is whether PW intends to exceed the scope of its reserved easement. In other words, can PW completely exclude the Defendants from any and every portion of the land because of its right to use the property for railroad purposes?
It is important to note that railroad easements are unique from other easements.
 [A]n easement of right of way granted to a railroad company is essentially different from any other. The nature of railway service requires exclusive occupancy, and a railroad company is entitled to the uninterrupted and exclusive possession and occupancy of its tracks and all of its rights of way necessary for conducting its business. . . . 65 Am. Jur. 2d Railroads § 71 (2001).
Specifically, the Deed provides that PW has the right "[t]o construct contiguous or adjacent additional rail lines and trackage . . . subject to the prior written approval of the City, which approval shall not be unreasonably withheld." (Cartier Aff. Ex. A ¶ 3(d), Jan. 23, 2009.) It is undisputed that the City approved construction of such additional lines. Broomfield argues that the fact that the City will charge PW $1,800 per annum for nine years shows that PW did not actually have the legal right to expand its tracks *Page 8 
and exclude the Defendants, but rather purchased that right from the City. PW argues that it agreed to pay the City as "a matter of goodwill." (Pl.'s Reply Mem. Supp. Mtn. Injunctive Relief at 13, Mar. 9, 2009.) Regardless of whether or not PW was required to pay the $1,800 per year, it is evident to this Court that the express language of PW's easement permits it to build additional tracks and to use the land exclusively subject to the City's consent as aforesaid. Broomfield's rights since the date of the 2002 Lease have been subject to PW's easement. Therefore, this Court finds that PW may expand its tracks and use the entire easement area to the exclusion of the Defendants.
 C Mandatory Injunction
Having found that PW has a right to use the easement area exclusively, the question becomes whether this Court should issue a mandatory injunction ordering the Defendants to remove their personal property from the land. "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier of fact." DeNucci v. Pezza, 114 R.I. 123, 130, 329 A.2d 807, 811 (R.I. 1974); see also Town of N. Kingstown v. Albert, 767 A.2d 659, 662 (R.I. 2001); Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983). The injunction sought is mandatory rather than prohibitory simply because it would require the Defendants to act — namely, to remove their property from the easement area — rather than refrain from acting. "Mandatory injunctions are looked upon with disfavor, and the courts seem even more reluctant to issue them than prohibitory ones." Shaw v. Tampa Elec.Co., 949 So. 2d 1066, 1070 n. 3 (Fla.Dist.Ct.App. 2d Dist. 2007) (citing Johnson v. Killian, 27 So. 2d 345, 346 (Fla. 1946)). *Page 9 
However, Rhode Island recognizes the general rule that courts may issue mandatory injunctions to correct continuing trespasses.See Renaissance Dev. Corp. v. Universal Props. Group, Inc.,821 A.2d 233, 238 (R.I. 2003); Adams v. Toro, 508 A.2d 399, 401 (R.I. 1986);Santilli v. Morelli, 102 R.I. 333, 338, 230 A.2d 860, 863 (1967). The general rule and its exception are stated in Santilli v. Morelli,102 R.I. 333, 338, 230 A.2d 860, 863 (1967):
 the owner of land is entitled to a mandatory injunction to require the removal of a structure that has been unlawfully placed upon his land, and the fact that such owner has suffered little or no damage because of the offending structure, or that it was erected in good faith, or that the cost of its removal would be greatly disproportionate to the benefit accruing to the plaintiff from its removal, is not a bar to the granting of coercive relief. However, the existence of such circumstances may in exceptional cases move the court to withhold the coercive relief contemplated by the general rule.
Here, PW does not allege that it is the owner of the land in question, but rather that it has an easement which permits it to use the land exclusively for railroad operations. It is undisputed that the City owns the land in question. However, this Court is satisfied that the general rule laid out in Santilli should apply to easement holders such as PW as well. See, e.g., Deisenroth v. Dodge, 111 N.E.2d 575
(Ill.App. Ct. 2d Dist. 1953) (granting mandatory injunction to remove obstruction to easement). In determining whether to grant this mandatory injunction (or coercive relief), this Court must consider the following factors: (i) whether PW has suffered little or no damage from the Defendants' property; (ii) whether the property was placed on the easement in good faith; and (iii) whether the cost to Defendants of removing the property would be greatly disproportionate to the benefit that PW would receive from its removal. *Page 10 
With respect to the first factor, this Court finds that PW has suffered and will continue to suffer damages because the location of the Defendants' property inhibits PW from expanding its tracks to meet the increasing demand from businesses seeking to access the Port of Providence by rail. The Director of Engineering at PW stated in his affidavit that "[t]he demand for PW's services is increasing at a rapid rate" and "[t]he number of railcars moving out of the Port of Providence has increased 71.5 percent from 2007 to 2008." (Cartier Aff. ¶ 16, Jan. 23, 2009.) Mr. Cartier stated further that "[n]ew customers are also moving into the Port of Providence area, generating additional economic activity for PW and for the City." Id. ¶ 17. Specifically, Mr. Cartier points to a letter from Rhode Island Recycled Metals, LLC, which states that it leased a parcel of land near the easement area because it anticipated using PW's rail service. Id. Ex. F. Mr. Cartier stated in his affidavit that "[i]n order to service Recycled Metals, PW needs to use one of the storage tracks currently being used to service Motiva Enterprises LLC []. Therefore, PW needs to install additional trackage for the present service of Motiva and as well as other customers."Id. ¶ 17. Based on Mr. Cartier's affidavit, this Court finds in favor of PW with respect to the first factor.
With respect to the second factor, the issue is whether the Defendants placed their Property on the land in good faith. When the Defendants placed their property on the land, they believed that the 2002 Lease with the City gave them such right. However, the Defendants either knew of should have known that the 2002 Lease was subject to PW's recorded easement rights. Therefore, the Defendants either knew or should have known that PW had reserved the right to use the land exclusively, and that at some point the Defendants might be forced to vacate the land. So, while the Defendants may have *Page 11 
initially placed their property on the land in good faith, their refusal to remove such property is not justified.
Finally, with respect to the third factor, this Court has not been given any evidence concerning the cost of removal to the Defendants. Therefore, it cannot determine whether the cost to the Defendants would greatly outweigh the benefit to PW.
Based on the foregoing analysis, this Court finds that PW is entitled to a mandatory injunction as hereafter provided: Defendants, at their cost and expense, shall remove all of their property, including, but not limited to, all containers, debris, equipment, and other materials from the entire easement area. Such removal shall commence not later than and be concluded by dates to be agreed upon by the parties within two weeks of the date hereof or the matter should be set down for a hearing to determine the pertinent dates of beginning and completion.
 Conclusion
To summarize, this Court finds (i) that PW's reserved easement is not void as repugnant; (ii) that PW has the right pursuant to the 1985 Deed to construct additional trackage and to exclude the Defendants from the entire easement area; and (iii) that the general rule inSantilli should apply entitling PW to a mandatory injunction.
Prevailing counsel shall present an appropriate order.
[1] It is undisputed that the City did not provide PW with the opportunity to review or approve the Lease under paragraph eleven of the Deed. The Defendants argue that PW waived this right of review and approval because PW knew about Defendants' use of the property in issue and never objected. This Court finds that whether the Lease is valid or not makes no difference to the resolution of this case — any rights that Broomfield may have acquired through the 2002 Lease were subject to PW's recorded easement.
[2] Initially, Broomfield was the named defendant in this suit, Coastal was later added.
[3] PW's Amended Verified Complaint contains four counts: (i) Interference with Easement; (ii) Trespass; (iii) Conversion; and (iv) Declaratory Judgment.
[4] PW argues that the Defendants lack standing to raise the issue of repugnancy because neither defendant was a party to the 1985 Deed. Because this Court finds that the rule of repugnancy does not apply here, it will not address the issue of standing.
[5] As mentioned supra in note one, whether the Lease has expired or not is immaterial to this Decision. Even if Broomfield effectively exercised its option to renew the Lease for a third three-year term, Broomfield's rights under the Lease are still subject to PW's recorded easement to use the property for railroad purposes.